# UNITED STATES DISTRICT COURT
# DISTRICT OF COLUMBIA

|  |  |
|---|---|
| Maverick Entertainment Group, Inc.    ) | |
| ) | |
| v.    ) | No. 1:10-cv-00569-RJL |
| ) | |
| Does 1-4,350    ) | |

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF NON-PARTY TIME WARNER CABLE INC.'S MOTION TO QUASH SUBPOENAS

Alexander Maltas (D.C. Bar # 490099)
LATHAM & WATKINS LLP
555 11th St. NW
Suite 1000
Washington, DC 20004
(202) 637-2200

*Counsel for Time Warner Cable Inc.*

# TABLE OF CONTENTS

Page

INTRODUCTION ............................................................................................................1

STATEMENT OF THE CASE.........................................................................................2

LEGAL STANDARD.......................................................................................................7

ARGUMENT....................................................................................................................9

I.     THE COURT SHOULD QUASH THE SUBPOENA BECAUSE COMPLIANCE
       WOULD CAUSE TWC UNDUE BURDENS AND BECAUSE PLAINTIFF'S
       COUNSEL HAS VIOLATED THEIR DUTY UNDER RULE 45 TO PREVENT
       UNDUE BURDENS....................................................................................................9

       A.     Compliance With The Subpoena Would Cause TWC To Incur Excessive
              And Unreasonable Burdens and Expense..............................................................9

       B.     The Court Should Quash the Subpoena Because of Dunlap's Failure to
              Take Reasonable Steps to Limit the Burdens on TWC .......................................11

       C.     The Burdens Are Created In Part By Dunlap's Failure to Observe
              Jurisdictional Limitations and By Improper Joinder .............................................13

II.    THE COURT SHOULD QUASH THE SUBPOENA BECAUSE PLAINTIFF
       DID NOT PROPERLY SERVE TWC .........................................................................15

III.   CONCLUSION.............................................................................................................17

## TABLE OF AUTHORITIES

Page

### CASES

*Achte/Neunte Boll etc. v. Does 1 – 4,577,*
No. 10-453 (D.D.C. filed Mar. 18, 2010) ................................................................ 3

*Arista Records LLC v. Does 1-19,*
551 F. Supp. 2d 1 (D.D.C. 2008) ............................................................................. 3

*Arista Records LLC v. Does 1-4,*
589 F. Supp. 2d 151 (D. Conn. 2008) ...................................................................... 3

*Arista Records, LLC v. Does 1-11,*
No. 07-2828, 2008 WL 4449444 (N.D. Ohio Sept. 30, 2008) ................................. 3

*Arista Records, LLC v. Does 1-12,*
No. 1:08-cv-1242, 2008 U.S. Dist. LEXIS 82548 (E.D. Cal. Sept. 4, 2008) ........... 3

*BMG Music v. Does 1-4,*
No. 3:06-cv-01579-MHP, 2006 U.S. Dist. LEXIS 53237 (N.D. Cal. July 31, 2006) .............. 15

*Call of the Wild Movie, LLC v. Does 1 – 358,*
No. 10-455 (D.D.C. filed Mar. 19, 2010) ................................................................ 3

*Cornered, Inc. v. Does 1 - 2,177,*
No. 10-1476 (D.D.C. filed Aug. 30, 2010) .............................................................. 3

*Cusumano v. Microsoft Corp.,*
162 F.3d 708 (1st Cir. 1998) .................................................................................... 8

*Doe v. Hersemann,*
155 F.R.D. 630 (N.D. Ind. 1994) ............................................................................. 16

*Donkeyball Movie LLC v. Does 1 – 171,*
No. 10-1520 (D.D.C. filed Sept. 8, 2010) ............................................................... 3

*Firefighters' Inst. for Racial Equal. v. City of St. Louis,*
220 F.3d 898 (8th Cir. 2000) ................................................................................... 16

*Fonovisa, Inc. v. Does 1-9,*
No. 07-1515, 2008 WL 919701 (W.D. Pa. Apr. 3, 2008) ........................................ 3

*FTC v. Compagnie de Saint-Gobain-Pont-A-Mousson,*
636 F.2d 1300 (D.C. Cir. 1980) ......................................................................... 15, 16

*G2 Productions, LLC v. Does 1 – 195,*
    No. 10-41 (D.D.C., filed Jan. 8, 2010) ............................................................... 3

*Hall v. Sullivan,*
    229 F.R.D. 501 (D. Maryland 2005) ................................................................... 16

*In re Auto. Refinishing Paint Antitrust Litig.,*
    229 F.R.D. 482 (E.D. Pa. 2005) .......................................................................... 8

*In re Micron Technology, Inc. Sec. Litig.,*
    264 F.R.D. 7 (D.D.C. 2010) ................................................................................ 8

*In re Subpoena Duces Tecum to AOL, LLC,*
    550 F. Supp. 2d 606, 612 (E.D. Va. 2008) .......................................................... 8

*Interscope Records v. Does 1 - 7,*
    494 F. Supp. 2d 388 (E.D. Va. 2007) ................................................................. 3

*Interscope Records v. Does 1-14,*
    558 F. Supp. 2d 1176 (D. Kan. 2008) ................................................................ 3

*Laface Records, LLC v. Does 1 – 38,*
    No. 5:07-cv-298, 2008 WL 544992 (E.D.N.C. Feb. 27, 2008) ........................... 14

*Linder v. Calero-Portcarrero,*
    180 F.R.D. 168 (D.D.C. 1998) ....................................................................... 7, 11

*Maverick Entertainment Group, Inc. v. Does 1 – 4,350,*
    No. 10-569 (D.D.C. filed April 8, 2010) ............................................................. 3

*Northrop Corp. v. McDonnell Douglas Corp.,*
    751 F.2d 395 (D.C. Cir. 1984) ............................................................................ 7

*Sony Music Entm't Inc., v. Does 1-40,*
    326 F. Supp. 2d 556 (S.D.N.Y. 2004) ................................................................. 3

*UMG Recordings, Inc. v. Doe,*
    No. 08-3999, 2008 WL 4104207 (N.D. Cal. Sept. 4, 2008) ................................. 3

*United States v. Philip Morris Inc.,*
    312 F. Supp. 2d 27 (D.D.C. 2004) ..................................................................... 16

*Voltage Pictures LLC v. Does 1 - 5,000,*
    No. 10-873 (D.D.C. filed May 24, 2010) ............................................................. 3

*Watts v. SEC,*
    482 F.3d 501 (D.C. Cir. 2007) ............................................................................. 7

*West Bay One, Inc. v. Does 1 – 2,000,*
   No. 10-481 (D.D.C. filed Mar. 23, 2010) ................................................... 3

*Williams v. City of Dallas,*
   178 F.R.D. 103, 109 (N.D. Tex. 1998) ...................................................... 8

*Worldwide Film Entertainment, LLC v. Does 1 – 749,*
   No. 10-38 (D.D.C., filed Jan. 8, 2010) ..................................................... 3

## STATUTES

18 U.S.C. § 2702(c) ............................................................................... 4

18 U.S.C. § 2703 ................................................................................... 5

## RULES

Fed. R. Civ. P.  5(c)(2)(E) ...................................................................... 17

Fed. R. Civ. P. 20(a)(2)(A) ..................................................................... 14

Fed. R. Civ. P. 26(b)(2)(C) ...................................................................... 7

Fed. R. Civ. P. 45 ............................................................................... 7, 8

Fed. R. Civ. P. 45(b)(1) ........................................................................ 15

Fed. R. Civ. P. 45(c) ............................................................................. 1

Fed. R. Civ. P. 45(c)(1) .................................................................. 7, 11, 12

Fed. R. Civ. P. 45(c)(3) .......................................................................... 7

## TREATISES

9 *Moore's Federal Practice* (3d ed. 2010) ............................................... 16

9A Wright & Miller, *Federal Practice and Procedure*
   (3d ed. 2008) ................................................................................. 16

## INTRODUCTION

Pursuant to Rules 45 and 26 of the Federal Rules of Civil Procedure, non-party Time Warner Cable Inc. ("TWC"), which operates as an Internet Service Provider under the name "Road Runner," hereby moves to quash the subpoena that it received in the above-captioned case. The subpoena demands that TWC provide identifying information in connection with 783 Internet Protocol ("IP") addresses that supposedly correspond to TWC subscribers who are defendants in this case. *See* Exhibit 1. This litigation is one of nearly a dozen identical cases filed by the law firm Dunlap Grubb & Weaver ("Dunlap") in this judicial district, each against hundreds or thousands of anonymous "John Doe" defendants. TWC, which is not a party to any of these cases, has now received multiple third party subpoenas from the Dunlap firm, each seeking identifying information about hundreds of its subscribers.

TWC moves to quash the instant subpoena in its entirety, for several reasons. Most significantly, not only would compliance with this subpoena cause TWC to incur significant and undue burdens, but Dunlap *already has fully litigated* this issue and lost. Judge Collyer, to whom two of Dunlap's parallel cases were assigned, already held a full hearing on TWC's motions to quash Dunlap's similarly-sized subpoenas in those cases. Judge Collyer found that that Dunlap's prior subpoenas were "overwhelming." She also made findings on the record that TWC had satisfied its burden of showing that it could handle only 28 IP address lookups per month for Dunlap's combined cases. She thus granted TWC's motions, directed Dunlap to limit its subpoenas to TWC to no more than 28 total IP address lookups per month, and ordered Dunlap to reimburse TWC's costs for each IP address lookup. *See infra* Section I.

Rule 45 places an affirmative burden on parties and attorneys to take steps to prevent imposing undue burdens on third parties. Fed. R. Civ. P. 45(c). Dunlap's decision to issue the instant subpoena to TWC—seeking 783 IP address lookups returnable within 30 days—shortly

after Judge Collyer issued her rulings cannot be seen as a good faith effort to comply with Rule 45, or with Judge Collyer's orders.

There are several other fatal flaws with the subpoena. Notably, Dunlap never properly served TWC with the subpoena. Dunlap had informed TWC's counsel in mid-September of its intent to serve a new subpoena on TWC in this case. TWC sent a letter to Dunlap on October 13, 2010 stating that it had never received any subpoena in this case, and asking Dunlap to confirm whether or not it had attempted service. Dunlap replied that it would look into it, but never followed up. Dunlap now evidently claims that it previously had faxed and/or emailed the subpoena to TWC. Neither fax nor email is a valid form of service of a third party subpoena in any event, but it unquestionably is insufficient when the serving party is on written notice that the subpoena was not received. To date, Dunlap has not properly served TWC with the subpoena.

Dunlap also was on express notice from Judge Collyer's earlier hearing that TWC has *zero* subscribers in this judicial district. Thus, Dunlap has no reasonable belief that this Court has personal jurisdiction over any of the 783 TWC defendants whom it has sued here, and indeed Dunlap is fully aware that this Court does not have jurisdiction. Moreover, joinder of the thousands of defendants in this case violates Rule 20, and has enabled Dunlap to serve massive discovery requests in a single subpoena. For each of these reasons, this Court should quash the subpoena.

## STATEMENT OF THE CASE

### A.   Background to This Litigation

The Dunlap law firm recently has filed a series of identical lawsuits in the U.S. District Court for the District of Columbia, each alleging that hundreds or thousands of anonymous John Doe defendants have unlawfully downloaded movies using the "bit torrent" protocol, and

thereby had infringed its clients' copyrights. *See Worldwide Film Entertainment, LLC v. Does 1 – 749*, No. 10-38 (D.D.C. filed Jan. 8, 2010); *G2 Productions, LLC v. Does 1 – 195*, No. 10-41 (D.D.C. filed Jan. 8, 2010); *Achte/Neunte Boll etc. v. Does 1 – 4,577*, No. 10-453 (D.D.C. filed Mar. 18, 2010); *Call of the Wild Movie, LLC v. Does 1 – 358*, No. 10-455 (D.D.C. filed Mar. 19, 2010); *West Bay One, Inc. v. Does 1 – 2,000*, No. 10-481 (D.D.C. filed Mar. 23, 2010); *Maverick Entertainment Group, Inc. v. Does 1 – 4,350*, No. 10-569 (D.D.C. filed April 8, 2010); *Voltage Pictures LLC v. Does 1 - 5,000*, No. 10-873 (D.D.C. filed May 24, 2010); *Cornered, Inc. v. Does 1 - 2,177*, No. 10-1476 (D.D.C. filed Aug. 30, 2010) ; *Donkeyball Movie LLC v. Does 1 – 171*, No. 10-1520 (D.D.C. filed Sept. 8, 2010). The complaint in each case is the same except for the name of the movie.

Dunlap's lawsuits are novel in their scale – whereas prior copyright infringement lawsuits that alleged unlawful downloading (such as the lawsuits filed by record companies) typically had involved defendants that numbered in the single or low double digits, Dunlap chose to pursue lawsuits against hundreds or thousands of defendants at once. *Cf., e.g., Arista Records LLC v. Does 1-19*, 551 F. Supp. 2d 1 (D.D.C. 2008); *Arista Records, LLC v. Does 1-12*, No. 1:08-cv-1242, 2008 U.S. Dist. LEXIS 82548 (E.D. Cal. Sept. 4, 2008); *Interscope Records v. Does 1-14*, 558 F. Supp. 2d 1176, 1178 (D. Kan. 2008); *Arista Records LLC v. Does 1-4*, 589 F. Supp. 2d 151 (D. Conn. 2008); *Fonovisa, Inc. v. Does 1-9*, No. 07-1515, 2008 WL 919701, *8-9, (W.D. Pa. Apr. 3, 2008); *Arista Records, LLC v. Does 1-11*, No. 07-2828, 2008 WL 4449444 (N.D. Ohio Sept. 30, 2008); *UMG Recordings, Inc. v. Doe*, No. 08-3999, 2008 WL 4104207 (N.D. Cal. Sept. 4, 2008); *Interscope Records v. Does 1-7*, 494 F. Supp. 2d 388 (E.D. Va. 2007); *Sony Music Entm't Inc., v. Does 1-40*, 326 F. Supp. 2d 556, 564-565 (S.D.N.Y. 2004).

3

No plaintiff has alleged that TWC played any role in the alleged infringement of its copyrights. TWC is a third party that is, among other things, an Internet Service Provider ("ISP"). TWC became involved in those cases because Dunlap's clients did not know the identity of the thousands of defendants whom they sued. Dunlap filed its complaints, then promptly served massive third party subpoenas on TWC and other ISPs, seeking to have the ISPs perform the extensive and burdensome work necessary to identify the anonymous defendants.

**B.      TWC's Successful Motion to Quash or Modify Dunlap's Prior Subpoenas**

Faced with third party subpoenas seeking an unprecedented and excessively burdensome number of IP address lookups, TWC moved to quash or modify two of Dunlap's subpoenas in cases that had been assigned to Judge Collyer.

TWC explained in its motions that it provides video, telephone, and Internet access service to its customers. In order to handle legal process, TWC has created a team within its Law Department that focuses exclusively on responding to subpoenas, warrants, court orders, National Security Letters, and other requests for information. *See* Affidavit of Craig Goldberg, ¶ 3 (Exhibit 2). The team comprises five full-time employees. *Id.* When a party seeks identifying information about a TWC Internet subscriber through judicial process, in most instances the party issuing the process provides TWC with an Internet Protocol ("IP") address, which is a type of Internet fingerprint, along with a date and time that the IP address was used. *Id.* ¶ 4. Through a multi-step process involving work at the corporate and the local level, TWC can identify the high-speed customer associated with that IP address at that time. *Id.* at ¶¶ 4-5.

Prior to Dunlap's lawsuits, TWC received an average of 567 IP lookup requests per month. *Id.* ¶ 6. Virtually all of these requests come from law enforcement. Some are emergency requests under 18 U.S.C. § 2702(c), which often involve risks of death or serious physical injury. Examples of these requests include suicide threats, child abduction cases, and

4

terrorist activity. Such cases take immediate priority. *Id.* Other cases include subpoenas, search warrants, and orders under 18 U.S.C. § 2703 that involve other significant issues, but on a broader timetable. *Id.* In order to accommodate law enforcement's requests within a reasonable time period, TWC has needed to retain a temporary worker to aid the full-time team. *Id.* As part of its motions to quash Dunlap's earlier subpoenas, TWC provided evidence that it, in light of the capacity of its subpoena compliance team and the team's ongoing law enforcement activities, TWC reasonably could add only 28 IP address lookups per month for all of Dunlap's cases combined. TWC also provided evidence that incurs costs of $45 per IP address lookup. *See id.* ¶ 10; *see also* Exhibits 3 and 4.

Judge Collyer held a full hearing on TWC's motions. She concluded that Dunlap's third party subpoenas were "overwhelming." *See* Exhibit 3 at 32, 36. She expressly made findings on the record that TWC had satisfied its burden of showing that it could handle only 28 IP address lookups per month for all of Dunlap's cases combined. *Id.* at 44. Judge Collyer thus granted TWC's motions, directed Dunlap to limit its subpoenas to TWC to no more than 28 total IP address lookups per month, and ordered Dunlap to reimburse TWC's costs for each IP address lookup. *See* Exhibit 4.

Judge Collyer also expressed great concern about some of the other aspects of Dunlap's litigation strategy. She noted, for example, that the Court likely lacked personal jurisdiction over many, if not most, defendants, and would have to dismiss such defendants once their locations are determined. Exhibit 3 at 43-44. She also considered the fact that plaintiffs faced potential joinder problems because they had not alleged that the defendants had acted in concert. *Id.* at 10-14, 17. Ultimately, Judge Collyer declined to resolve those concerns in the context of TWC's motion to quash, but instead ordered a detailed notice to subscribers of their potential rights.

### C.   This Litigation

Shortly after Judge Collyer issued her rulings, TWC's counsel learned that Dunlap intended to serve a new subpoena in this litigation upon TWC.  TWC informed Dunlap that it did not believe that a massive new subpoena was consistent with Dunlap's obligations under Rule 45, or with Judge Collyer's findings and orders.

By mid-October, 2010, nearly a month after Dunlap expressed an intent to serve its new subpoena, TWC still was not aware of having been served.  Undersigned counsel sent a letter to Dunlap stating that TWC did not believe it had been served, and wrote that "if my understanding is incorrect, please let me know right away the date on which you served TWC, and the method by which you perfected service." *See* Exhibit 5.  Nicholas Kurtz of the Dunlap firm replied "I will double-check on the Maverick subpoena, I don't know if it was served or not." *See* Exhibit 6.  Mr. Kurtz did not follow up.  Not until November 12 did Mr. Kurtz express the view that in fact he previously had served TWC via email and/or fax on September 22.  Mr. Kurtz evidently was not aware of this fact on October 13 upon receiving the letter, but became aware of it a month later, after the subpoena return period had expired.

In any event, TWC now is in possession of a subpoena from Dunlap seeking 783 IP address lookups within 30 days.  This comes after Dunlap litigated the question of TWC's capacity to respond to their subpoenas, and was ordered to limit their subpoenas to 28 IP address lookups.  Dunlap also has issued this additional subpoena after being on notice that TWC does not have any subscribers in this judicial district.  Thus, Dunlap has invoked this Court's subpoena power in order to seek discovery about defendants over whom it knows that this Court lacks personal jurisdiction.

Finally, Dunlap has not alleged that the thousands of defendants in this case acted in concert or as part of the same transaction or occurrence, which Rule 20 requires in order to join

defendants in a single case. Indeed, given the range of dates and times identified in the subpoena, *see* Exhibit 1, such an allegation would be facially implausible. Thus, Dunlap has evaded Rule 20's joinder requirements, and in doing so has been able to improperly serve a single, massive discovery request in this case.

## LEGAL STANDARD

Federal Rule of Civil Procedure 45 provides that a court must quash or modify a subpoena that "fails to allow a reasonable time to comply" or that "subjects a person to undue burden." Fed. R. Civ. P. 45(c)(3); *see also* Fed. R. Civ. P. 45(c)(1). Rule 45 also places an affirmative obligation on parties and attorneys to take reasonable steps to reduce undue burdens on non-parties. Fed. R. Civ. P. 45(c)(1). It further provides that a court must enforce this affirmative duty through sanctions—including lost earnings and reasonable attorney's fees—particularly where, as here, the subpoena is patently unreasonable on its face and is a transparent attempt to evade this Court's prior rulings. *Id.*

In addition, Rule 26 requires a court to limit discovery where "the discovery sought is unreasonably cumulative or duplicative" or where "the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(2)(C); *see Watts v. SEC*, 482 F.3d 501, 507 (D.C. Cir. 2007) (Rule 26 applies to and constrains Rule 45 subpoenas). An undue burden under both Rule 26 and Rule 45 is one that is unreasonable or oppressive in light of all the circumstances of the case. *Northrop Corp. v. McDonnell Douglas Corp.*, 751 F.2d 395, 403 (D.C. Cir. 1984). Courts have found that a third-party subpoena can be overbroad based on the "time and expense required" to respond, including "the volume of material requested, the ease of searching for the requested documents in the form presented, and whether compliance threatens the normal operations of the responding [party]." *Linder v. Calero-Portcarrero*, 180 F.R.D. 168, 175 (D.D.C. 1998). A subpoena also "imposes an undue burden on a party when a subpoena is

7

overbroad." *In re Subpoena Duces Tecum to AOL, LLC*, 550 F. Supp. 2d 606, 612 (E.D. Va. 2008). If responding would require "an inordinate amount of time and resources," the court may quash the subpoena or limit it. *Id.*

Courts must be particularly sensitive to the burdens placed on non-parties, and "concern for the unwanted burden thrust upon non-parties is a factor entitled to special weight in evaluating the balance of competing needs" in the Rule 45 inquiry. *Cusumano v. Microsoft Corp.*, 162 F.3d 708, 717 (1st Cir. 1998); *see also In re Micron Technology, Inc. Sec. Litig.*, 264 F.R.D. 7, 9 (D.D.C. 2010) (Rule 45 "requires district courts to be generally sensitive to the costs imposed on third parties") (internal quotation marks omitted); *Williams v. City of Dallas*, 178 F.R.D. 103, 109 (N.D. Tex. 1998) (status as nonparty entitled to special consideration). The advisory committee notes to Rule 45 state that one purpose of the Rule is to ensure that "a non-party required to produce documents or materials is protected against significant expense resulting from involuntary assistance to the court." Fed. R. Civ. P. 45 advisory committee's note, 1991 Amendments. Moreover, requiring costs to be fixed in advance of production "will often be the most satisfactory accommodation to protect the party seeking discovery from excessive costs." *Id.* For these reasons, courts frequently order parties to pay the costs incurred by third parties in providing services to the judicial process by responding to Rule 45 subpoenas. *See, e.g., In re Auto. Refinishing Paint Antitrust Litig.*, 229 F.R.D. 482, 496 (E.D. Pa. 2005) (ordering plaintiff to compensate third party costs for the cost of production); *see also* Exhibit 4.

**ARGUMENT**

### I.   THE COURT SHOULD QUASH THE SUBPOENA BECAUSE COMPLIANCE WOULD CAUSE TWC UNDUE BURDENS AND BECAUSE PLAINTIFF'S COUNSEL HAS VIOLATED THEIR DUTY UNDER RULE 45 TO PREVENT UNDUE BURDENS

Compliance with these subpoenas would cause TWC to incur significant and undue burdens. These burdens are exacerbated by the fact the subpoena is in addition to Dunlap's prior subpoenas in similar litigation, for which TWC already has successfully established that compliance would cause undue burdens. In these circumstances, the Court should quash the subpoena in its entirety.

### A.   Compliance With The Subpoena Would Cause TWC To Incur Excessive And Unreasonable Burdens and Expense

Responding to the instant subpoena would impose a significant burden on TWC. TWC's compliance team comprises five full-time employees. Goldberg Affidavit (Exhibit 2) ¶¶ 3, 6. The work of TWC's compliance team consists principally of assisting law enforcement in combating serious crimes, including child endangerment, money laundering, and identity theft. *Id.* ¶ 6. TWC also responds to requests relating to terrorist threats. *Id.* Working at full capacity, TWC responds to these requests as quickly as it can. Even without these additional requests by Dunlap, law enforcement would prefer that TWC respond more quickly. Every additional IP lookup that TWC performs for Dunlap would cause an additional delay in responding to law enforcement.

Looking up identifying information based on an IP address often requires both centralized efforts at TWC's corporate offices, as well as local efforts at the local operations center where the relevant subscriber is located. Goldberg Affidavit ¶ 5. This process is time consuming and requires the attention of multiple people often in multiple locations. *Id.* The time and effort that TWC must expend to ensure accuracy of its lookups are critical because the

9

stakes are high; a subscriber that TWC identifies might face criminal action from law enforcement, or might face being named in a civil suit such as this one.

TWC has performed a cost study that establishes that TWC's cost of looking up identifying information from one IP address is approximately $45. *Id.* ¶ 11. TWC incurs this cost on the basis of each IP address that it looks up, regardless of whether the IP addresses correlates to a subscriber that is the subject of another Ford request or a subscriber that is otherwise unknown to Ford. *Id.* In other words, if two IP addresses each relate to the same subscriber, TWC incurs costs for two IP searches. *Id.* The cost to TWC to respond to these subpoenas would be approximately $35,235 (783 IP addresses x $45 per IP address), plus the costs of notifying each subscriber. The cost of responding to all of Dunlap's subpoenas is well over $100,000.

Consistent with its law enforcement obligations and its overall capacity constraints, TWC has determined that it cannot reasonably respond to more than 28 total IP lookups per month for all of the various copyright lawsuits combined. Goldberg Affidavit ¶ 10. Any greater number would impede TWC's ability to serve law enforcement. Alternatively, it would force TWC to devote significantly greater resources to serving copyright plaintiffs' litigation strategy in cases in which TWC is not even a party. Neither option is reasonable or appropriate under Rule 45. These 28 lookups per month already have been ordered by Judge Collyer.

The reality is that Dunlap has chosen to pursue a novel litigation strategy—suing thousands of defendants at once—that creates very significant burdens on non-parties. Pursuing this particular litigation strategy, with the significant burdens that it generates, was entirely their choice. Moreover, other "copycat" lawsuits have arisen throughout the country, which have added to the burdens on TWC. But TWC's capabilities do not increase simply because

plaintiffs' attorneys have chosen to sue thousands of John Doe defendants for copyright infringement. TWC simply lacks the ability to respond to these subpoenas without incurring significant burdens.

The inherent challenge of responding to competing demands makes this a zero sum equation. TWC either can respond to law enforcement, or it can set aside resources to assist Dunlap's clients. In essence, what Dunlap seeks is to force TWC to significantly alter its business operations to suit their preferred litigation strategy. TWC is not aware of *any* case that has required a non-party to significantly alter its business operations to suit a party's litigation strategy. Indeed, the case law is directly to the contrary. *See Linder*, 180 F.R.D. at 175 (undue burden is one in which "compliance threatens the normal operations of the responding [party]"). And such an outcome would be inconsistent with Rule 45's express protections for third parties.

Moreover, it is not as though TWC is seeking to avoid complying with lawful subpoenas, including subpoenas in copyright cases—it has an entire team dedicated to doing so. What has changed is the scope of this particular law firm's copyright litigation strategy. They have chosen to increase the size of their lawsuits exponentially, and they cannot be surprised that non-parties lack the resources to comply.

Consequently, because compliance with these subpoenas would cause TWC to incur extensive and undue burdens, the Court should quash the subpoenas.

### B.    The Court Should Quash the Subpoena Because of Dunlap's Failure to Take Reasonable Steps to Limit the Burdens on TWC

Rule 45 mandates that a party or attorney "*must* take reasonable steps to avoid imposing undue burden or expense on a person subject to a subpoena." Fed. R. Civ. P. 45(c)(1) (emphasis added). In this case, plaintiff's attorney chose to issue to TWC a very large subpoena with actual and express knowledge that the subpoena would cause TWC to incur undue burdens. Plaintiff's

counsel was on notice because it fully litigated and lost motions addressing exactly this issue just a few months ago (July, 2010). Judge Collyer made findings that TWC had established that two of Dunlap's early subpoenas (one seeking 398 IP address lookups and the other seeking 809 IP address lookups) would cause TWC to incur undue burdens. *See* Exhibit 3 at 32, 44. Shortly after losing those motions, Dunlap chose to issue another subpoena to TWC demanding 783 lookups within 30 days. That choice cannot be squared with Rule 45's mandate to protect third parties.

To the extent that Dunlap believes that they had no obligations under Rule 45 in this case because Judge Collyer's rulings were in different cases with different named plaintiffs, that argument would be incorrect, for two reasons. First, Rule 45 on its face imposes obligations not only on parties but also on attorneys. *See* Fed. R. Civ. P. 45(c)(1) ("a party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense..."). Thus, even if Maverick was not on express notice of TWC's capabilities and the burdens that this subpoena would cause, Dunlap unquestionably was, and thus violated Rule 45.

Second, it is plain that this series of identical cases filed by the Dunlap law firm all are part and parcel of a single, concerted effort to pursue allegedly unlawful downloading. The complaints are word-for-word the same, save for substituting the name of a different movie. Defendants in all of the cases receive the same settlement notice directing them to the same website, www.copyrightsettlement.info ("All Major Credit Cards Accepted").[1] Dunlap should have informed this Court's clerk that these were "related cases" in the first place (which would

---

[1] Several articles also have suggested that these cases are akin to a joint venture between Dunlap and the plaintiffs. *See, e.g.,* http://arstechnica.com/tech-policy/news/2010/06/the-riaa-amateurs-heres-how-you-sue-p2p-users.ars.

have protected TWC from the added expense of having to move to quash multiple times to present the same burden defense). The notion that one plaintiff should be insulated from knowledge about actions in another plaintiff's case when the complaints are identical, the cases present the identical claims and factual allegations, and they are filed by the same law firm, elevates form over substance.

Finally, any other result would render Judge Collyer's ruling a nullity. Judge Collyer found that TWC had established that it could reasonably handle only 28 IP address lookups per month and ordered Dunlap to modify its subpoenas accordingly. If Dunlap could simply shift its lookups to other cases, and compel TWC to incur the same burdens in other cases that it was not able to obtain from Judge Collyer, then it would be as if Judge Collyer had not ruled at all. TWC has not increased its capabilities in the few months since Judge Collyer ruled, and if her orders are to have any practical effect, then at a minimum they should apply to all of Dunlap's cases.

### C.    The Burdens Are Created In Part By Dunlap's Failure to Observe Jurisdictional Limitations and By Improper Joinder

The burdens on TWC created by Dunlap's large subpoenas are caused in part by their violation of basic litigation constraints under the Federal Rules. For example, TWC informed Dunlap during the hearing before Judge Collyer that it does not have *any subscribers at all* within the District of Columbia. *See* Exhibit 3 at 6-7. As a result, every single IP address that Dunlap identifies in its subpoena corresponds to a TWC subscriber located in another state. *See* Goldberg Affidavit (Exhibit 2) ¶ 13. Moreover, it is not difficult to discern basic geographic information about an IP address.[2] Thus, even if Dunlap had not been on express notice from the

---

[2]    Multiple easy, publicly available tools would reveal the approximate location of the IP addresses. A reverse domain-name lookup or reverse DNS lookup, or reference to the public database operated by the American Registry for Internet Numbers, would identify the approximate geographic location, such as the city or state, of each IP address. Thus,

hearing before Judge Collyer, any minimal investigation would have revealed to Dunlap that all of the TWC subscribers who are the subject of this subpoena are located outside of the District of Columbia. Dunlap thus has invoked this Court's subpoena powers and has imposed sizeable burdens on TWC, even though it was on notice that the Court lacks personal jurisdiction over any TWC subscribers identified in the subpoena.[3]

The large burdens on TWC also arise from Dunlap's failure to abide by Rule 20's joinder requirements. It is not evident from the complaint in this case that there is anything common to the thousands of defendants that would justify joining them in a single litigation. In this case, the plaintiff simply has alleged that different defendants, at different times and different locations, each allegedly committed a similar form of wrongful conduct. The subpoena confirms as much by identifying IP addresses at different dates and times. *See* Exhibit 1. There is no allegation linking all of the defendants together and no suggestion that their conduct could conceivably arise "out of the same transaction [or] occurrence." Fed. R. Civ. P. 20(a)(2)(A).

Courts facing these identical circumstances repeatedly have held that a plaintiff may not join in a single action multiple defendants who have allegedly downloaded or facilitated the download of copyrighted material at different times and locations. *See, e.g., Laface Records, LLC v. Does 1 – 38*, No. 5:07-cv-298, 2008 WL 544992, at *2-3 (E.D.N.C. Feb. 27, 2008) (severing defendants because mere fact that defendants allegedly used same peer-to-peer

---

minimal investigation would have put Dunlap on notice that none of the TWC defendants are located in the District. Certainly, the computer professional Dunlap relied on to collect IP addresses in the first place could have determined with little difficulty that none of the TWC IP addresses corresponds to a District of Columbia subscriber.

[3] Notably, Judge Collyer now has required Dunlap to affirmatively establish the Court's jurisdiction over each Doe defendant. *See* Order, *Achte/Neunte Boll Kino Beteiligungs GMBH & Co. KG v. Does 1-4,577*, No. 1:10-cv-00453-RMC, Dkt. No. 143 (D.D.C. Nov. 19, 2010).

protocol to commit copyright infringement does not support joinder); *BMG Music v. Does 1-4,* No. 3:06-cv-01579-MHP, 2006 U.S. Dist. LEXIS 53237, at *5-6 (N.D. Cal. July 31, 2006) (severing multiple defendants in action where only connection between them was allegation that they used same ISP to conduct copyright infringement).  In the *BMG* case, for example, the court noted that the complaint alleged only that "defendants, at different times and dates, have engaged in separate and distinct acts of downloading or disseminating the sound recordings," which was not a basis for joinder.  2006 U.S. Dist. LEXIS 53237 at *5.  The same is true here.

Thus, if the plaintiff want to sue these thousands of defendants, then it owes this Court thousands of separate filing fees, and it must file individual actions.  Dunlap then would be unable to combine together a single, massive discovery request with which to burden non-party ISPs such as TWC.

## II.   THE COURT SHOULD QUASH THE SUBPOENA BECAUSE PLAINTIFF DID NOT PROPERLY SERVE TWC

Rule 45 provides that service "requires delivering a copy to the named person."  Fed. R. Civ. P. 45(b)(1).  Dunlap has never purported to serve TWC other than via fax or email.  TWC gave Dunlap written notice that it had not actually received the subpoena in this case.  *See* Exhibit 5.  Dunlap did not respond to this written notice until a month later, when it informed TWC of its view that it had perfected service by emailing and/or faxing the subpoena several months earlier.

The long-standing view of most courts has been that the only permissible means of serving a third party subpoena under Rule 45 is in-person service.  That is because a Rule 45 subpoena is "intended to secure the personal appearance of and production of documents by an otherwise unwilling witness through threat of judicial sanctions for noncompliance."  *FTC v. Compagnie de Saint-Gobain-Pont-A-Mousson,* 636 F.2d 1300, 1311 (D.C. Cir. 1980).  Because

15

of the significant stakes and the fact that the receiving party is an outsider to the litigation, "the majority rule is that personal service of a subpoena is required, and that service by mail or other substituted service is insufficient." 9 *Moore's Federal Practice*, § 45.21 at 49-50 (3d ed. 2010); *see also* 9A Wright & Miller, *Federal Practice and Procedure* § 2454 at 397 (3d ed. 2008) ("The longstanding interpretation of Rule 45 has been that personal service of subpoenas is required."). That remains the law in this Circuit. *Compagnie*, 636 F.2d at 1311 ("service by registered U.S. mail is never a valid means of delivering compulsory process" such as a subpoena); *see also United States v. Philip Morris Inc.*, 312 F. Supp. 2d 27, 37-38 (D.D.C. 2004) (leaving subpoena at Department of Justice mail room or with support staff insufficient because personal service required). Dunlap's attempts unquestionably fail this rule.

A minority of courts now have begun to permit service via certified mail and/or FedEx, on the theory that these methods carry sufficient reliability to provide a reasonable likelihood that the subpoenaed party actually received the subpoena. *See, e.g., Hall v. Sullivan, 229 F.R.D.* 501 (D. Maryland 2005) (acknowledging that "majority of courts" require in-person service, but nevertheless allowing service by FedEx); *Doe v. Hersemann*, 155 F.R.D. 630 (N.D. Ind. 1994) (acknowledging weight of cases, but allowing service by certified mail). That is not the law in this Circuit, but even if it were, that would not help Dunlap. Dunlap has not purported to serve TWC via FedEx or certified mail, and even the minority view does not endorse electronic service. *See, e.g., Firefighters' Inst. for Racial Equal. v. City of St. Louis*, 220 F.3d 898, 903 (8th Cir. 2000) (even if Rule 45 permits service by means other than personal delivery, fax service is unacceptable).

Finally, even for routine discovery that does not implicate the concerns underlying compulsory process such as a subpoena, Dunlap's service would be improper. For routine

pleadings and discovery, Rule 5 endorses electronic service only if "the person consented in writing," and the rule also provides that electronic service is "not effective if the serving party learns that it did not reach the person to be served." Fed. R. Civ. P. 5(c)(2)(E). Rule 5 is more lenient than any form of service that courts have endorsed for a Rule 45 subpoena, but even under that more lenient rule, Dunlap's service failed because they did not have consent in writing from TWC, and because they were on affirmative, written notice that the subpoena did not reach TWC.

Because service was plainly improper, the Court should quash the subpoena.[4]

## III.   CONCLUSION

For the foregoing reasons, the Court should quash the subpoena issued to TWC.


November 22, 2010                                Respectfully submitted,


                                                 *Alexander Maltas*
                                                 Alexander Maltas (D.C. Bar # 490099)
                                                 LATHAM & WATKINS LLP
                                                 555 11th St. NW
                                                 Suite 1000
                                                 Washington, DC 20004
                                                 (202) 637-2200

                                                 *Counsel for Time Warner Cable Inc.*

---

[4]     Because service was so plainly improper, TWC's motion is timely even though it was filed after the purported return date of the subpoena.  TWC did not even learn that Dunlap was asserting that it had served the subpoena until mid-November, a month after the return date expired, and a month after TWC informed Dunlap in writing that it had not received the subpoena.  Upon learning of Dunlap's position, TWC promptly and diligently served objections and filed this motion.