# UNITED STATES DISTRICT COURT
# DISTRICT OF COLUMBIA

| | |
|---|---|
| ───────────────────────────── ) | |
| Maverick Entertainment Group, Inc.      ) | |
| ) | |
| v.      ) | No. 1:10-cv-00569-RJL |
| ) | |
| Does 1-4,350      ) | |
| ───────────────────────────── ) | |

## NON-PARTY TIME WARNER CABLE INC.'S REPLY IN SUPPORT OF MOTION TO QUASH SUBPOENA

Alexander Maltas (D.C. Bar #490099)
LATHAM & WATKINS LLP
555 11th St. NW
Suite 1000
Washington, DC 20004
(202) 637-2200
alexander.maltas@lw.com

*Counsel for Time Warner Cable Inc.*

**TABLE OF CONTENTS**

INTRODUCTION ..................................................................................................................1

ARGUMENT ......................................................................................................................3

I.    PLAINTIFF HAS NO PERSUASIVE RESPONSE TO TWC'S EVIDENCE
      THAT COMPLIANCE WITH THE SUBPOENA WILL IMPOSE
      SIGNIFICANT BURDENS ON TWC ..............................................................................3

      A.    Dunlap Has Improperly Demanded That TWC Set Aside All of Its
            Resources For Its Clients ........................................................................................3

      B.    The Court Should Quash the Subpoena Because Plaintiff Has Not
            Rebutted TWC's Evidence That Compliance Will Impose A Substantial
            Burden ....................................................................................................................4

      C.    Plaintiff's Unsupported Allegations Regarding TWC's Intentions Are
            False ......................................................................................................................8

      D.    Plaintiff's Failure to Contest the Lack of Jurisdiction and Improper Joinder
            Confirms the Validity of TWC's Objections on Those Grounds ...........................9

II.   PLAINTIFF HAS NOT REBUTTED TWC'S ARGUMENT THAT SERVICE
      OF THE SUBPOENA WAS IMPROPER ........................................................................12

CONCLUSION ..................................................................................................................14

# TABLE OF AUTHORITIES
## CASES

*Achte/Neunte Boll Kino Beteiligungs GMBH & Co. KG v. Does 1-4,577,*
    No. l:l0-cv-00453-RMC (D.D.C.) ........................................................................ 11

*BMG Music v. Does 1-4,*
    No. 3:06-cv-01579-MHP, 2006 U.S. Dist. LEXIS 53237 (N.D. Cal. July 31, 2006) .............. 11

*Celanese Corp. v. E. I. du Pont de Nemours & Co.,*
    58 F.R.D. 606 (D. Del. 1973) ............................................................................... 8

*Combat Zone, Inc. v. Does 1 – 1037,*
    No. 3:10-cv-96 (N.D. W. Va.) ............................................................................... 12

*Doe v. Hersemann,*
    155 F.R.D. 630 (N.D. Ind. 1994) .......................................................................... 13

*Enterprise Int'l v. Corporacion Estatal Petrolera Ecuatoriana,*
    762 F.2d 464 (5th Cir. 1985) ............................................................................... 11

*FTC v. Compagnie de Saint-Gobain-Pont-A-Mousson,*
    636 F.2d 1300 (D.C. Cir. 1980) ............................................................................ 12

*Hall v. Sullivan,*
    229 F.R.D. 501 (D. Md. 2005) ............................................................................. 13

*In re Auto. Refinishing Paint Antitrust Litig.,*
    229 F.R.D. 482 (E.D. Pa. 2005) ........................................................................... 7

*In re Midlantic Corp. Shareholder Litig.,*
    Misc. No. 92-99, 1994 WL 750664 (D.D.C. Oct. 24, 1994) ...................................... 8

*Laface Records, LLC v. Does 1 – 38,*
    No. 5:07-cv-298, 2008 WL 544992 (E.D.N.C. Feb. 27, 2008) ................................... 11

*Linder v. Calero-Portcarrero,*
    180 F.R.D. 168 (D.D.C. 1998) ...................................................................... 5, 7, 8

*Third World Media LLC v. Does 1-1,243,*
    No. 3:10-cv-90, Dkt. No. 52 (N.D. W. Va. Dec. 8, 2010) ....................................... 12

*United Elec., Radio and Mach. Workers of America v. 163 Pleasant Street Corp.,*
    960 F.2d 1080 (1st Cir. 1982) ............................................................................. 11

*United States v. Columbia Broadcasting System, Inc.,*
    666 F.2d 364 (9th Cir. 1982) .............................................................................. 7

*United States v. Friedman*,
   532 F.2d 928 (3rd Cir. 1976) ............................................................................. 7

*West Bay One, Inc. v. Does 1-1,653*,
   No. 1:10-cv-00481-RMC (D.D.C.) ................................................................. 11

## RULES

Fed. Civ. P. Rule 11 ............................................................................................ 10, 11

Fed. Civ. P. Rule 45(c) .............................................................................................. 8

Fed. Civ. P. Rule 5 ................................................................................................... 13

Fed. R. Civ. P. 11(b) ................................................................................................ 10

Fed. R. Civ. P. 20 ........................................................................................... 2, 9, 10

Fed. R. Civ. P. 45 .......................................................................................... passim

Fed. R. Civ. P. 45(b)(4) ........................................................................................... 12

## INTRODUCTION

Dunlap does not legitimately contest the central issue presented by Time Warner Cable Inc.'s ("TWC") motion to quash, namely that the burdens on TWC of complying with this subpoena are the product of Dunlap's choice to pursue a novel litigation strategy by suing thousands of anonymous defendants at once. That choice, and that strategy, is completely out of proportion to prior copyright litigation, and is the reason why TWC's subpoena compliance resources are strained. Plaintiff cannot be surprised that a non-party such as TWC lacks the resources to respond to their massive subpoenas in light of their unprecedented approach to litigation.

Dunlap also does not contest that it already litigated this issue in this Court, and lost. Dunlap claims that those rulings involved different dockets, but does not contest that (1) Judge Collyer's rulings put the Dunlap firm on express notice of TWC's capabilities (and of the fact that TWC has no subscribers in this judicial district), and (2) enforcing the subpoena in this case would eviscerate the protections of TWC contained in Judge Collyer's rulings. Indeed, Dunlap has filed virtually the identical opposition brief in this case that it filed in the cases before Judge Collyer, including multiple arguments that Judge Collyer already rejected in ruling for TWC. Consequently, Dunlap presents no plausible justification for its violation of Rule 45, or for its attempt to circumvent Judge Collyer's orders.

Dunlap's only real response is to demand that TWC simply allocate more resources to its litigation. Dunlap does not cite any authority for the proposition that a civil litigant can demand that a third party—who is not even a part of the litigation—must alter its business operations to suit the plaintiff's preferred litigation strategy, nor is TWC aware of any case law endorsing such a position. Indeed such a result would be inconsistent with Rule 45's protection of third parties.

To the extent that Dunlap's novel approach to litigation creates new and unusually large burdens, Rule 45 establishes that it may not simply impose those burdens on unwilling third parties.

Dunlap makes a number of specific arguments regarding TWC's capacity to respond to these subpoenas, but, as demonstrated below, each is specious, and indeed most already have been resolved against Dunlap by Judge Collyer.   Ultimately, Dunlap cannot dispute that compliance with these subpoenas *would in fact* cause TWC to incur significant and undue burdens, and it cannot dispute that it was aware of that fact prior to serving the subpoena.  That is sufficient to quash the subpoena.

Additionally, TWC demonstrated in its opening brief that this Court lacks jurisdiction over any of the TWC subscribers identified in the complaint, and that joinder of the defendants in this case plainly is improper under Rule 20.  Plaintiff's only response is to suggest that the Court should wait to address those issues until after discovery.  But TWC's point is that the Court should not order massively burdensome discovery when it is apparent today that the Court lacks jurisdiction over any of the subjects of that discovery.  There may be circumstances in which subtle factual questions counsel in favor of waiting until there has been some discovery to address arguments regarding jurisdiction or joinder, but this case does not present any such circumstances.  The Goldberg affidavit (Exhibit 2 to TWC's motion) establishes that TWC has zero subscribers in this district.  This Court consequently lacks personal jurisdiction over even a single TWC subscriber identified in the complaint, and nothing in the complaint suggests otherwise.  Moreover, it is obvious from the face of the complaint and from the subpoena that joinder of all these defendants does not satisfy Rule 20.  In such circumstances, delay will only enable plaintiff to impose significant and improper burdens on TWC.

Finally, plaintiff claims that service of the subpoena on TWC via fax was proper. Plaintiff does not dispute that there is a D.C. Circuit case on point that requires in-person service (plaintiff's citation to a District of Maryland case disagreeing with the D.C. Circuit's reasoning is not relevant). Plaintiff also does not cite a single case endorsing service by fax. Indeed, not one of plaintiff's case citations supports its position. Plaintiff's counsel claims that he spoke by telephone with someone at TWC who had the subpoena; plaintiff's counsel's hearsay is the only evidence of that statement, but even if it were true, it would not cure the improper service. It also does not resolve the fact that plaintiff was on written notice that TWC had not been served with the subpoena, but did not respond.

For the reasons stated in TWC's opening memorandum, and for the reasons that follow, the Court should quash the subpoena in its entirety.[1]

## ARGUMENT

## I.   PLAINTIFF HAS NO PERSUASIVE RESPONSE TO TWC'S EVIDENCE THAT COMPLIANCE WITH THE SUBPOENA WILL IMPOSE SIGNIFICANT BURDENS ON TWC

### A.   Dunlap Has Improperly Demanded That TWC Set Aside All of Its Resources For Its Clients

Initially, Dunlap complains that TWC is "prioritizing" other subpoenas over theirs because TWC argued that responding to the instant subpoena would require it to set aside

---

[1] Plaintiff suggests that TWC's motion is "procedurally defective" because TWC did not include a separate statement about meeting and conferring with plaintiff. Plaintiffs' Opp. at 4. TWC's counsel and plaintiff's counsel have had multiple telephone calls and email exchanges regarding these subpoenas, with no resolution. Plaintiff's counsel has made clear its view that it does not feel bound by Judge Collyer's orders, and would not agree to withdraw the instant subpoena. Those calls and correspondence amply satisfied Local Rule 7(m). For avoidance of any doubt, undersigned counsel, upon reading plaintiff's opposition brief, offered to meet and confer once again with plaintiff's counsel. That meet and confer has occurred; neither TWC nor plaintiff presented any position that it had not previously stated. This additional meet and confer thus was entirely repetitive and futile, and plaintiff certainly cannot claim prejudice in these circumstances.

months of law enforcement requests (not to mention the dozens of other civil subpoenas in other copycat copyright infringement cases).   Plaintiff's Opp. at 6-7.   Dunlap has it precisely backwards, and its argument supports quashing the subpoena rather than enforcing it.

It is Dunlap who is doing the prioritizing.  Dunlap evidently now recognizes that this is a zero sum scenario.  TWC has certain capacity to respond to lawful process such as subpoenas. *See* Goldberg Affidavit (Exhibit 2 to TWC's Memorandum).   TWC receives hundreds of law enforcement requests each month.   TWC also faces several *years* of work in responding to Dunlap's earlier subpoenas, as ordered by Judge Collyer.  Dunlap's position appears to be that TWC must set aside all other work, including serious law enforcement matters, and cease its normal activities in order to focus exclusively on its clients for months or years.  By the time TWC finishes with the instant subpoena, much of the data for other requests will have become stale or be irretrievably lost (TWC's logs keep IP information for six months).  There is nothing improper about noting that Dunlap's subpoena compels a trade off between, on the one hand, responding to law enforcement requests and, on the other hand, enabling Dunlap to pursue massive and highly burdensome copyright litigation.

**B.     The Court Should Quash the Subpoena Because Plaintiff Has Not Rebutted TWC's Evidence That Compliance Will Impose A Substantial Burden**

Plaintiff makes several arguments why this Court should discount or ignore TWC's evidence that compliance with the subpoena will create substantial burdens.   None of its arguments are persuasive.

Plaintiff first make the frivolous claim that TWC's sworn affidavit somehow is flawed because it is from in-house counsel.  Plaintiffs' Opp. at 6.  That argument merely reflects plaintiff's displeasure at what the evidence shows.  The Goldberg Affidavit establishes that TWC's subpoena compliance team is part of its Law Department.  *See* TWC Motion, Ex. 2, ¶ 3.

4

Thus, it is hardly surprising that the person with knowledge of the compliance team's activities also is part of the Law Department.  Mr. Goldberg supervises the compliance team and is the attorney with most direct responsibility for the compliance team's activities.  Far from being an improper affiant, Mr. Goldberg is the person best positioned to testify about TWC's compliance capabilities, and plaintiff did not (and could not) show otherwise.  Dunlap raised this identical objection before Judge Collyer, and Judge Collyer necessarily rejected it in ruling for TWC.

Next, plaintiffs question the "detail" of TWC's evidence.  Plaintiffs' Opp. 6.  But TWC explained precisely the number of IP address lookups it receives on average each month, detailed the law enforcement activities to which most of its efforts are directed, described TWC's decentralized structure that requires multiple steps to look up information corresponding to an IP address, and explained the burden that responding to Plaintiff's subpoena would place on the team.  *See* TWC Motion Exhibit 2.  And, as plaintiff concedes, TWC provided it with a detailed cost study outlining the basis for its costs.  Plaintiffs' Opp. 14.  Plaintiff does not dispute that responding to its subpoena would require TWC to redirect substantial resources away from compliance with law enforcement requests.  TWC's evidence amply satisfies its burden to demonstrate that, under the facts and circumstances of this case, compliance would be unduly burdensome.  *Cf. Linder v. Calero-Portcarrero*, 180 F.R.D. 168, 173-74 (D.D.C. 1998).  Again, Dunlap raised this identical argument to Judge Collyer, and Judge Collyer rejected it.

Dunlap mistakenly asserts that TWC actually has greater capabilities to handle IP address lookups, based on several flawed arguments, each of which—again—Judge Collyer already has resolved in TWC's favor.  First, Dunlap argues that TWC previously offered to perform greater IP lookups in its prior cases, and that this offer somehow establishes that TWC has greater capabilities than it now asserts.  Plaintiff's Opp. 9.  As part of an attempt to settle these discovery

disputes on a global basis, TWC did initially express a willingness to provide some lookups each month for Dunlap's cases in order to avoid litigation costs, but TWC expressly stated that that its offer represented a compromise intended to avoid litigation, and that the offer would in fact impose a significant burden on TWC.  The fact that TWC offered to incur certain burdens as a compromise to settle this dispute and avoid costly litigation in no way minimizes the actual burdens caused by Dunlap's subpoenas.  Dunlap raised this point to Judge Collyer both in its brief and at oral argument, and Judge Collyer rejected it by limiting TWC's obligations to 28 total lookups per month.  *See* Exhibits 3 & 4 to TWC's Motion.  In any event, the small number of lookups per month that TWC discussed during negotiations is degrees of magnitude less than the more than the 783 IP lookups at issue in these cases.

Second, Dunlap argues that TWC provided information about 200 IP requests on a short time frame in two of its prior cases, and it claims that TWC thus has greater capacity to respond to IP address lookups than it is representing to this Court.  Plaintiff's Opp. 14.  That argument is entirely disingenuous and false.  TWC was able to resolve those requests quickly because most of those requests mistakenly related to a *different ISP*'s subscribers, or fell outside TWC's six-month retention window.  Thus, TWC provided no information at all for most of those 200 requests.  TWC ultimately responded to only 37 IP lookups for those two subpoenas combined, and required 1 ½ months to do so—precisely consistent with its 28 IP address per month capabilities.  Once again, Dunlap made this identical argument to Judge Collyer, and she necessarily rejected it when she found that TWC's capacity was 28 monthly lookups.  *See* Exhibits 3 & 4 to TWC Motion.  In any event, if Dunlap is representing that its current subpoena similarly includes numerous improper requests for information about a different ISP's subscribers, then it should promptly withdraw its flawed subpoena.

Next, Dunlap repeats its refrain that different ISPs have provided a greater number of IP address lookups.  Plaintiffs' Opp. 10.  Dunlap makes no attempt to show how that could be relevant to the issues before this Court.  All that plaintiff has shown is that different ISPs may be differently situated.  But the question before this Court is the burden *on TWC*, and plaintiffs' argument in no way rebuts the uncontroverted evidence that compliance with its subpoena will impose substantial burdens on TWC.

Plaintiff's arguments relating to the scope of any compliance burdens amount to an argument that TWC is a big company that should just absorb the cost of responding to expansive third-party subpoenas.  *See* Plaintiffs' Opp. 14-15.  Plaintiff does not cite any case that has embraced that approach.  To the contrary, courts squarely have held that even federal government agencies, which obviously have vastly greater resources than TWC, are entitled to be protected from undue burdens under Rule 45.  *See Linder v. Calero-Portocarrero,* 251 F.3d 178, 182-83 (D.C. Cir. 2001); *see also United States v. Columbia Broadcasting System, Inc*., 666 F.2d 364, 368 (9th Cir. 1982) (large corporations are not excluded from protection from third party compliance costs).  Plaintiffs also do not dispute that one of the central purposes of Rule 45 is to protect non-parties like TWC from incurring significant burdens.  Fed. R. Civ. P. 45 advisory committee's note (1991 amendments).  Rule 45 reflects a "broad congressional judgment with respect to fairness in subpoena enforcement proceedings," *United States v. Friedman*, 532 F.2d 928, 937 (3rd Cir. 1976), and courts have frequently invoked Rule 45 to protect non-parties, including large companies.  *See Columbia Broadcasting*, 666 F.2d at 368; *In re Auto. Refinishing Paint Antitrust Litig.*, 229 F.R.D. 482, 496 (E.D. Pa. 2005).

In addition, courts repeatedly have held that labor costs are a legitimate burden for which reimbursement is appropriate.  *See, e.g., In re Midlantic Corp. Shareholder Litig.*, Misc. No. 92-

99, 1994 WL 750664 at *6 (D.D.C. Oct. 24, 1994) (ordering reimbursement of labor costs); *Celanese Corp. v. E. I. du Pont de Nemours & Co.*, 58 F.R.D. 606, 611-612 (D. Del. 1973) (third party's costs of searching for documents is reimbursable); *Linder*, 180 F.R.D. at 177 (labor costs are reimbursable).   Thus, plaintiff's argument that some of TWC's costs and burdens relate to internal labor, *see* Plaintiffs' Opp. 14-15, does not relieve plaintiff of its obligation under Rule 45(c) to protect TWC from undue burdens.   The fact that TWC's employees otherwise would work on other activities, *see* Plaintiff's Opp. 15, confirms rather than rebuts TWC's claim that plaintiffs' subpoenas impose significant burdens.

### C.    Plaintiff's Unsupported Allegations Regarding TWC's Intentions Are False

Dunlap also repeats the same *ad hominem* allegation that it made to Judge Collyer, namely that TWC's reason for pointing out how much larger these cases are than any comparable copyright litigation is to "garner public support" or suggest that it is "a good ISP for copyright infringers."   Plaintiffs' Opp. 12-13.   That is false and Dunlap conspicuously provides no support for its accusation.   TWC does not endorse copyright infringement.   To the contrary, such activities would be a plain violation of TWC's terms of service.[2]   Nor has TWC publicized its motion or sought to use this proceeding to "garner public support" for copyright infringement. Dunlap's argument has no particular connection to TWC and would apply to any motion to quash filed by any ISP in any of these related copyright infringement cases.   In Dunlap's view,

---

[2]     TWC's terms of service states that "Time Warner Cable's subscribers and account holders may not upload, post, transmit or otherwise make available on or via the Road Runner Service any material protected by copyright in a manner that infringes that copyright.   In accord with the Digital Millennium Copyright Act, it is the policy of Time Warner Cable to terminate in appropriate circumstances the Road Runner Service of any subscriber or account holder who is a repeat infringer.   However, as provided in the Time Warner Cable Subscriber Agreement, Time Warner Cable expressly reserves the right to terminate or suspend the service of any subscriber or account holder even for a single act of infringement."   *See* http://help.rr.com/HMSFaqs/e_copyrightcomp.aspx.

any ISP that moves to quash one of its burdensome subpoenas "exposes itself to a claim for contributory copyright infringement." Plaintiffs' Opp. at 11. No court has remotely endorsed that view, and it cannot be squared with Rule 45's protection of third parties and its procedures for quashing unduly burdensome subpoenas.

Dunlap's rhetoric evades the central issue here, which is the burden on TWC, a non-party, to respond to this discovery. TWC simply has pointed out that Dunlap's cases are dramatically larger than any comparable copyright litigation. The burdens created by Dunlap's cases are far out of the norm and Dunlap cannot be surprised that TWC lacks available resources to respond to their massive discovery requests. Dunlap offers no response whatsoever to these common sense points.

### D.  Plaintiff's Failure to Contest the Lack of Jurisdiction and Improper Joinder Confirms the Validity of TWC's Objections on Those Grounds

TWC, in its opening memorandum and accompanying affidavit, pointed out that it does not serve any subscribers in the District of Columbia and thus that this Court lacks jurisdiction over any TWC defendants. TWC also noted that the burdens created by these very large subpoenas are due in part to plaintiff's refusal to abide by Rule 20's joinder requirements, because it is clear from the complaint and the subpoena that plaintiff is not plausibly alleging that the defendants' acts were part of the same transaction or occurrence, or that the defendants acted in concert.

Plaintiff does not dispute the accuracy of either of these points, and its silence is revealing. *See* Plaintiffs' Opp. at 13. Plaintiff's only argument is that these arguments "are not the appropriate topics on a motion to quash," and this Court should wait to address any issues regarding jurisdiction or improper joinder until after discovery. *Id*. That argument lacks merit.

First, TWC is raising these points because plaintiff's failure to observe basic jurisdictional and other procedural limitations is *the direct cause* of the burdens on TWC. Dunlap has served multiple large subpoenas, and has been able to do so only by including thousands of defendants who are beyond the jurisdiction of this Court, and by joining together thousands of unrelated acts and actors.  Plaintiff suggests that TWC lacks "standing" to make these arguments, *see* Plaintiff's Opp. 12 n.10, but Rule 45 certainly permits TWC to demonstrate to this Court why the third-party subpoena that it faces is improper and will cause it significant burdens.

Second, plaintiff argues that the Court should wait to address these fundamental problems until after discovery.  *See* Plaintiffs' Opp. 13.  But the time to address these issues was before Dunlap filed its complaints.  Rule 11 requires Dunlap to have conducted a reasonable inquiry into the facts before filing these cases.  *See* Fed. R. Civ. P. 11(b).  Even a cursory inquiry through easily available, publicly accessible sources would have revealed that TWC does not have any subscribers in the District of Columbia, and thus that this Court unquestionably lacks jurisdiction over any TWC defendant.[3]  *See* TWC Memorandum at 13.  Dunlap also was on notice of these facts from the hearing before Judge Collyer.  Additionally, plaintiff's own allegations and subpoenas reveal that it is alleging only that different people acted at different times and different locations, which would not support joinder under Rule 20.  Had the plaintiff informed this Court at the time it sought leave to pursue discovery that the Court lacked jurisdiction over any of the TWC subscribers and that joinder of all the defendants was improper, it is quite possible that the Court would have denied plaintiff's request for discovery.

---

[3]     For example, TWC's website allows visitors to search for service offerings by state/region or by ZIP code.  *See* http://www.timewarnercable.com.  Either type of search reveals that TWC does not offer services in the District of Columbia.

To permit massive discovery to proceed before addressing these objections would reward plaintiff's counsel for failing to conduct the basic inquiry that Rule 11 requires. It also would enable plaintiff to impose large and undue burdens on TWC, with such burdens arising directly from plaintiffs' violation of the federal rules. Other courts have acted on such objections in the context of a motion to quash precisely because there is no basis to permit any discovery to continue. *See, e.g., Laface Records, LLC v. Does 1 – 38*, No. 5:07-cv-298, 2008 WL 544992, at *2-3 (E.D.N.C. Feb. 27, 2008) (severing defendants because mere fact that defendants allegedly used same peer-to-peer protocol to commit copyright infringement does not support joinder); *BMG Music v. Does 1-4,* No. 3:06-cv-01579-MHP, 2006 U.S. Dist. LEXIS 53237, at *5-6 (N.D. Cal. July 31, 2006) (severing multiple defendants in action where only connection between them was allegation that they used same ISP to conduct copyright infringement); *Enterprise Int'l v. Corporacion Estatal Petrolera Ecuatoriana*, 762 F.2d 464, 470-471 (5th Cir. 1985) (no authority to issue preliminary relief without personal jurisdiction); *United Elec., Radio and Mach. Workers of America v. 163 Pleasant Street Corp.*, 960 F.2d 1080, 1084 (1st Cir. 1982) (same).

Moreover, Judge Collyer now has ordered Dunlap to state affirmatively the Court's jurisdiction over the Doe defendants or else dismiss them. *See* Order, *Achte/Neunte Boll Kino Beteiligungs GMBH & Co. KG v. Does 1-4,577,* No. 1:10-cv-00453-RMC, Dkt. No. 143 (D.D.C. Nov. 19, 2010); Order, *West Bay One, Inc. v. Does 1-1,653*, No. 1:10-cv-00481-RMC, Dkt. No. 58 (D.D.C. Nov. 19, 2010). Dunlap's response to these orders is quite telling. In *Achte/Neunte*, Dunlap filed an amended complaint that identified by name only one defendant over whom the Court has jurisdiction. In *West Bay One*, Dunlap filed an amended complaint that identified by name only two defendants over whom the Court has jurisdiction. Once pressed on jurisdiction, Dunlap dismissed over 5,300 Doe defendants in those two cases.

In addition, the U.S. District Court for the Northern District of West Virginia, which is adjudicating copycat cases, also now is promptly dismissing all Doe defendants who are not residents of that jurisdiction. *See, e.g.,* Orders, *Combat Zone, Inc. v. Does 1 – 1037*, No. 3:10-cv-96, Dkt. Nos. 40, 46, & 47 (N.D. W. Va. Dec. 3-7, 2010) (dismissing defendants who reside in other states); *see also* Report and Recommendation, *Third World Media LLC v. Does 1-1,243*, No. 3:10-cv-90, Dkt. No. 52 (N.D. W. Va. Dec. 8, 2010) (magistrate's report and recommendation dismissing Oregon resident for lack of personal jurisdiction). This Court should do the same, and that would result in quashing the subpoena.

## II.    PLAINTIFF HAS NOT REBUTTED TWC'S ARGUMENT THAT SERVICE OF THE SUBPOENA WAS IMPROPER

Plaintiff never states anywhere in its brief the manner by which it claims to have perfected service of the subpoena. *Cf.* Fed. R. Civ. P. 45(b)(4) (requiring a statement, certified by the server, that shows the "the date and manner of service and the names of the persons served"). But TWC is not aware of plaintiff ever having claimed any method other than fax or email. Plaintiff's arguments regarding the propriety of service via fax or email are plainly incorrect, especially in light of the fact that plaintiff had written notice that TWC had not actually received the subpoena.

First, plaintiff dismisses D.C. Circuit and D.C. District Court cases on the ground that district courts from certain other jurisdictions believe they are "unpersuasive." Plaintiff's Opp. 16-17. Whether or not those opinions are persuasive to the plaintiff or to out-of-circuit courts is irrelevant. The D.C. Circuit in *FTC v. Compagnie de Saint-Gobain-Pont-A-Mousson*, 636 F.2d 1300, 1311 (D.C. Cir. 1980), interpreted Rule 45 as follows: "Federal Rule 45(c), governing subpoena service, does not permit any form of mail service, nor does it allow service of the subpoena merely by delivery to a witness' dwellingplace," but instead requires in-person service.

(the paragraph lettering of Rule 45 has since changed, but its provisions regarding service have not substantively changed).   Plaintiff does not attempt to show why this decision is not binding.

Even under the alternative view, which plaintiff acknowledges is a "minority position," *see* Plaintiff's Opp. 17, none of its cited cases supports its argument that service was proper.  In *Hall v. Sullivan*, 229 F.R.D. 501 (D. Md. 2005), the court permitted service via Fedex.  In *Doe v. Hersemann*, 155 F.R.D. 630 (N.D. Ind. 1994), the court permitted service via certified mail.  But plaintiff does not assert that it served the subpoena on TWC by Fedex or certified mail, but rather by fax or email.  Neither of plaintiff's cited cases endorsed electronic service by any means.  As plaintiff also notes, *Hersemann* permitted service via certified mail only "when the witness does not deny actual receipt."  *See* Plaintiff's Opp. 17.  But TWC expressly denied having been served in writing.  That makes service improper under *Hersemann* and even under the more generous service provisions for discovery under Rule 5.

Plaintiff also argues that TWC says that it accepts lawful process by fax on its website. Plaintiff's Opp. 16.  As plaintiff acknowledges, that website is addressed, in large bold letters, to "law enforcement."  A party may choose to waive objections to service by fax, as TWC has done to assist law enforcement, but that agreement does not extend to plaintiff.  Plaintiff's counsel also claims to have had a telephone conversation with someone at TWC about the subpoena; only plaintiff's counsel can report on that hearsay, but even if the conversation occurred, it does not change the fact that service was improper.  It also does not change the fact that TWC informed plaintiff in writing that it was not aware of having been served with the subpoena.  At the time of that letter, plaintiff's counsel did not recall any telephone conversation, but suddenly remembered it a month later.

The Court should quash the subpoena principally due to the burdens, plaintiff's counsel's violation of Rule 45, and the lack of jurisdiction over any Doe defendants associated with TWC. In the alternative, the Court should quash the subpoena due to improper service.

## CONCLUSION

For the foregoing reasons, and for the reasons stated in TWC's opening memorandum, this Court should quash the subpoena issued to TWC in its entirety.


December 9, 2010                              Respectfully submitted,


                                             _    /s/ Alexander Maltas          _
                                             Alexander Maltas (D.C. Bar #490099)
                                             LATHAM & WATKINS LLP
                                             555 11th St. NW
                                             Suite 1000
                                             Washington, DC 20004
                                             (202) 637-2200
                                             alexander.maltas@lw.com

                                             *Counsel for Time Warner Cable Inc.*

**CERTIFICATE OF SERVICE**

I, Alexander Maltas, certify that on December 9, 2010, I electronically filed the foregoing "Non-Party Time Warner Cable Inc.'s Reply in Support of Motion to Quash Subpoena" via the Court's CM/ECF system and that service will be accomplished by the CM/ECF system.

\_\_/s/ Alexander Maltas_____
Alexander Maltas (D.C. Bar #490099)