**UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **MAVERICK ENTERTAINMENT** | ) | |
| **GROUP, INC.** | ) | |
| | ) | |
| | ) | |
| **v.** | ) | **CA. 1:10-cv-00569-RJL** |
| | ) | |
| **DOES 1 – 4,350** | ) | |
| | ) | |
|     **Defendants.** | ) | |
| | ) | |

**PLAINTIFF'S OPPOSITION TO MOTION TO QUASH SUBPOENA FILED BY NON-**

**PARTY TIME WARNER CABLE INC.**

TABLE OF CONTENTS

I. INTRODUCTION ...................................................................................................1

II. LEGAL PRINCIPLES ON A MOTION TO QUASH ...........................................2

III. ARGUMENT .......................................................................................................4

    A. THE MOTION TO QUASH IS PROCEDURALLY DEFECTIVE ............................4

    B. PLAINTIFF HAS MET ITS THRESHOLD BURDEN TO ISSUE THE SUBPOENA4

    C. TWC HAS NOT PROVIDED ANY GROUND TO QUASH THE SUBPOENA.........6

        1. TWC has not justified any excessive or unreasonable burden ..................6

        2. Plaintiff's counsel has attempted to work with TWC, but TWC has refused to comply with the subpoena since day one.................................................................11

        3. TWC's misplaced arguments and attacks on Plaintiff's counsel show TWC's true intention to thwart's Plaintiff's case in this court and the court of public opinion......12

        4. TWC's arguments regarding costs are unsubstantiated and show TWC's true intent to hold Plaintiff hostage in an effort to avoid compliance...........................................14

        5. TWC's argument on service fails to tell the whole story.........................................16

IV. CONCLUSION....................................................................................................18

## TABLE OF AUTHORITIES

**Cases**

Arista Records LLC v. Does 1-19, 551 F. Supp. 2d 1 (D.D.C. 2008) ..............................................3

Doe v. Hersemann, 155 F.R.D. 630 (N.D. Ind. 1994) ........................................................... 17-18

Fonovisa, Inc. v. Does 1-19, No. 07-1515, 2008 WL 919701 (W.D. Pa. April 3, 2008) ...............3

F.T.C. v. Compagnie De Saint-Gobain-Pont-a-Mousson, 636 F.2d 1300 (D.C. Cir. 1980) . passim

Hall v. Sullivan, 229 F.R.D. 501 (D. Md. 2005) ................................................................. 15-1, 18

Heat & Control, Inc. v. Hester Industries, Inc.,

      785 F.2d 1017, 228 USPQ 926 (Fed.Cir. 1986) ...................................................................3

Horizons Titanium Corp. v. Norton Co., 290 F.2d 421 (1st Cir. 1961)............................................3

In re Exxon Valdez, 142 F.R.D. 380, 383 (D.D.C. 1992) ............................................................14

LaFace Records, LLC v. Does 1-38, 2008 WL 544992 (E.D.N.C.)...............................................12

Linder v. Calero-Portocarrero, 180 F.R.D. 168 (D.D.C. 1998) .............................................10, 15

Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd., 545 U.S. 913, 125 S.Ct. 2764 (2005) .....13

Northrop Corp. v. McDonnell Douglas Corp., 751 F.2d 395 (D.C. Cir. 1984).......................... 5-3

United States v. Int'l Bus. Mach. Corp., 83 F.R.D. 97 (S.D.N.Y. 1979) .........................................3

United States v. Philip Morris Inc., 312 F. Supp. 2d 27 (D.D.C. 2004).......................................17

Westinghouse Electric Corp. v. City of Burlington, 351 F.2d 762 (D.C. Cir. 1965) ......................3

**Statutes**

Fed. R. Civ. P. Rule 26 ......................................................................................................... 2-3, 4

Fed. R. Civ. P. Rule 45 .......................................................................................................3, 11, 18

LCvR Rule 7 ...................................................................................................................................4

I. INTRODUCTION

Plaintiff submits this opposition to a motion to quash a subpoena issued to Time Warner

Cable Inc. ("TWC").  To briefly summarize Plaintiff's case, Plaintiff has identified certain

Defendants who have unlawfully copied and distributed Plaintiff's motion pictures over the

Internet.  At this point, Plaintiff has only been able to identify the Doe Defendants by their

Internet Protocol ("IP") and the date and time of alleged infringement.  The only way that

Plaintiff can determine Defendants' actual names is from the Internet Service Providers ("ISPs")

to which Defendants subscribe and from which Defendants obtain Internet access, as this

information is readily available to the ISPs from documents they keep in the regular course of

business.

Plaintiff's Complaint was filed on April 9, 2010 and named Does 1-1,000 as Defendants.

[Doc. No. 1][1]  Plaintiff then filed a Motion for Leave to Take Discovery Prior to the Rule 26(f)

Conference, which was granted by this Court via a minute order on April 19, 2010 and via a

written order on May 24, 2010.  [*See* Doc. Nos. 4-6 and 7][2]  Thereafter, Plaintiff served

numerous subpoenas on the non-party ISPs, requesting various production dates.

In response to the subpoenas issued pursuant to the court's order, TWC has objected on

various grounds, none of which justify quashing or even limiting the scope of the subpoena.

First, TWC argues that responding to the subpoena would impose excessive and unreasonable

burdens and expense.  However, TWC's arguments and evidence in support of this position are

---

[1]  On August 10, 2010, Plaintiff filed its First Amended Complaint in this case.  [Doc. No. 9]
Plaintiff's First Amended Complaint names Does 1-4,350 as Defendants and specifically
identifies all of the IP addresses for which Plaintiff is seeking discovery.  [*See* Doc. No. 9-1]

[2]  On October 19, 2010, Plaintiff filed a motion for an order approving discovery on the First
Amended Complaint.  [Doc. No. 10]  On October 25, 2010, the Court granted Plaintiff's motion
approving Plaintiff's discovery on the First Amended Complaint.  [Doc. No. 11]

severely flawed.  TWC's primary argument for not complying with the subpoena is that a different judge ruled in a different case, involving different plaintiffs, that TWC only had to produce 28 IP addresses per month.  Now, TWC has taken the position that this order applies to Plaintiff simply because it has the same law firm, and therefore TWC should not have to resolve a single IP address in this case.  There is simply no support for that position.

Second, TWC argues that Plaintiff's counsel has failed to take reasonable steps to limit the burdens on TWC.  That is simply not true.  Third, TWC argues that the overall case is improper because of jurisdictional and joinder issues.  Even if TWC, a non-party, had standing to make such assertions, they are premature and do not justify quashing the subpoena.  Last, TWC argues that service of the subpoena was improper.  As with TWC's other arguments, it only present part of the story.

Because the motion does not provide good cause for quashing the subpoena, the court should not quash the subpoena.  Further, because TWC has not provided good cause to limit the subpoena, and in fact has not even asked to limit the subpoena, Plaintiff requests that the motion be denied in its entirety.  Overall, TWC's motion illustrates its true tactics – file motions to quash to thwart various plaintiffs' discovery efforts and thus market itself as a safe harbor for copyright infringers.


## II. LEGAL PRINCIPLES ON A MOTION TO QUASH

A person served a discovery subpoena may move either for a protective order under Rule 26(c) or for an order quashing or modifying the subpoena under Rule 45(c)(3).  Rule 26(c) authorizes district courts, upon a showing of "good cause" by "a party or by the person from whom discovery is sought" to "make any order which justice requires to protect a party or person

from annoyance, embarrassment, oppression, or undue burden or expense."  Rule 45(c)(3)

provides that the court may quash or modify the subpoena if it requires disclosure of privileged

or other protected matter, if no exception or waiver applies, or if it subjects a person to undue

burden.

The burden of persuasion in a motion to quash a subpoena is borne by the movant, and

the "burden is particularly heavy to support a 'motion to quash as contrasted to some more

limited protection.'"  Westinghouse Electric Corp. v. City of Burlington, 351 F.2d 762, 766

(D.C. Cir. 1965) (denying a motion to quash supported by two affidavits); United States v. Int'l

Bus. Mach. Corp., 83 F.R.D. 97, 104 (S.D.N.Y. 1979); Horizons Titanium Corp. v. Norton Co.,

290 F.2d 421, 425 (1st Cir. 1961); see Northrop Corp. v. McDonnell Douglas Corp., 751 F.2d

395, 403-04 (D.C. Cir. 1984).  The district court must balance "the relevance of the discovery

sought, the requesting party's need, and the potential hardship to the party subject to the

subpoena."  Heat & Control, Inc. v. Hester Industries, Inc., 785 F.2d 1017, 1024, 228 USPQ 926,

931 (Fed.Cir. 1986) (citing Deitchman v. E.R. Squibb & Sons, Inc., 740 F.2d 556, 560, 564 (7th

Cir. 1984)).

Additionally, on a motion to quash a subpoena, the merits of a case are not at issue.  See

Arista Records LLC v. Does 1-19, 551 F. Supp. 2d 1, 8 (D.D.C. 2008) ("factual and technical

arguments . . . are unrelated to any appropriate inquiry associated with a motion to quash."); see

also Fonovisa, Inc. v. Does 1-19, No. 07-1515, 2008 WL 919701, at *8 (W.D. Pa. April 3, 2008)

(holding that if the individual or entity whose identifying information was sought by a subpoena

served on an ISP "believes that it has been improperly identified by the ISP, [the individual or

entity] may raise, at the appropriate time, any and all defenses, and may seek discovery in

support of its defenses").

III. ARGUMENT

A. THE MOTION TO QUASH IS PROCEDURALLY DEFECTIVE.

TWC's motion to quash is procedurally defective in that TWC's counsel never met and conferred with Plaintiff's counsel about the motion.

> Before filing any nondispositive motion in a civil action, counsel shall discuss the anticipated motion with opposing counsel, either in person or by telephone, in a goodfaith effort to determine whether there is any opposition to the relief sought and, if there is opposition, to narrow the areas of disagreement. … A party shall include in its motion a statement that the required discussion occurred, and a statement as to whether the motion is opposed.

LCvR Rule 7(m).[3]

Here, TWC's motion to quash did not include a statement that any meet and confer discussion occurred because TWC decided to surprise Plaintiff with its motion.  While the parties' counsel exchanged emails regarding the objections TWC had to the subpoena, TWC's counsel did not inform Plaintiff's counsel about this motion until after it was filed.  See Declaration of Nicholas A. Kurtz, filed concurrently herewith ("Kurtz Decl."), ¶ 3.

B. PLAINTIFF HAS MET ITS THRESHOLD BURDEN TO ISSUE THE

SUBPOENA.

Initially it must be noted that the court has already determined that Plaintiff has met its threshold burden to obtain further information about the Doe Defendants by identifying the Doe Defendants with sufficient specificity and showing that Plaintiff's suit can withstand a motion to dismiss.  [See Doc. Nos. 7 and 11 (Court's orders authorizing discovery)]  As more fully set out in Plaintiff's Motion for Leave to Take Discovery Prior to the Rule 26(f) Conference [See Doc.

---

[3] Further, a motion for a protective order under Rule 26(c) "must include a certification that the movant has in good faith conferred or attempted to confer with other affected parties in an effort to resolve the dispute without court action."

No. 4], Plaintiff identified the unique IP address for each Defendant, along with the date and time of alleged infringement and ISP that provided Internet access to each Defendant and assigned the unique IP address to the Defendant, from information provided to it by Guardaley, Limited.  [See also Doc. No. 10 (Plaintiff's First Amended Complaint listing the IP addresses)]

This information was obtained by Guardaley's proprietary tracing software program to trace the IP address for each Defendant, as detailed in the declarations of Benjamin Perino and Patrick Achache.  However, Plaintiff is unable to obtain the true identity of the Doe Defendants without issuing subpoenas to the non-party ISPs, and the Defendants must be identified before this suit can progress further.  Therefore, Plaintiff has already demonstrated good cause for the requested information.

Further, Plaintiff has made a prima facie evidentiary showing that the IP addresses it has identified and subpoenaed to various ISPs did make an unlawful download of Plaintiff's movies on a specific date and time.  Again, Plaintiff utilized proprietary technology developed and instituted by Guardaley that detects the unauthorized distribution of movies and other audiovisual content and files over online media distribution systems.  See Achache Declaration [Doc. No. 6] ¶ 4.  Accordingly, Defendants' IP addresses at the time of the alleged infringement were included in this case because they were offering files corresponding to Plaintiff's movies for unlawful transfer or distribution.  See id. at ¶ 8.  In fact, Guardaley actually downloaded Plaintiff's movies from the IP address assigned to these Defendants, just as it does with all Doe Defendants.  See id. at ¶ 9.  Lastly, Guardaley confirmed that the files that Defendants distributed were actually Plaintiff's movies by watching both and comparing them.  Id. at ¶¶ 16-17.

## C.  TWC HAS NOT PROVIDED ANY GROUND TO QUASH THE SUBPOENA.

### 1.  TWC has not justified any excessive or unreasonable burden.

First, it should be noted that the only evidence in support TWC's claims on its subpoena compliance capabilities are from its in-house counsel.  TWC has not even attempted to present any declarations or evidence from the actual people that conduct the IP address searches. Therein, TWC's claims of its capabilities are severely lacking in detail.  There is no detail of how long it takes to look up an IP address, how many each employee does, etc.[4]  The only information offered to the court is that the looking up the requested information is a "multi-step" process that is "time consuming and can require the work of multiple people at multiple locations."  Exhibit 2 to TWC's motion (Affidavit of Craig Goldberg) at ¶ 5.  This does not establish any undue burden.

TWC's argument is generally based on the number of IP addresses it resolved last year. That number does substantiate its current capabilities.[5]  While TWC attempts to pull at the heart strings by stating it has to respond to important law enforcement subpoenas, it never states how many law enforcement requests it has received this year or even this month.

Further, TWC never states how it has the right to pick and choose what subpoenas or court orders take priority.  TWC unabashedly admits that when faced with competing subpoenas issued pursuant to independent court orders, the company internally prioritizes to which ones it

---

[4]  TWC may argue that it cannot divulge this information because it is proprietary trade secrets. However, TWC is not in the business of subpoena compliance.  TWC is in the business of providing cable television and internet services.  Divulging its process in complying with subpoena requests does not divulge TWC's trade secrets.

[5]  TWC has argued that responding to the subpoena would "force TWC to significantly alter its business operations."  Motion at p. 11.  However, TWC's business operations are supplying its customers with cable television and internet.  The legal department, which includes the subpoena compliance team, is not a part of TWC's business operations.

will respond and in what order, presumably disregarding the requirements and mandate of each court granting the various orders.  TWC repeatedly reiterates that subpoenas issued to assist with law enforcement efforts "take immediate priority" (Motion to Quash, Ex. 2 (Affidavit of Craig Goldberg) at ¶ 6), but it has provided absolutely no authority or legal basis for choosing to prioritize criminal subpoenas over civil subpoenas.  The reason TWC does not cite one single reference to a statute, case, or other authority in connection with its voluntary internal procedure of prioritizing to which subpoenas it will respond and in what order, and which ones it will disregard is clear: there is simply no legal authority or basis for prioritizing a subpoena received from law enforcement *after* receipt of a civil subpoena unless they are submitted pursuant to 18 USC §2702.  In making redundant references to the copyright subpoenas' supposed interference with TWC's efforts to assist law enforcement, TWC is obviously attempting to inject a morality argument for the Court to consider, without legal foundation.

While Plaintiff agrees that prioritizing subpoenas to assist law enforcement with emergency situations where there is a risk of endangerment may be merited, there is no reason or basis for TWC's position that compliance with general subpoenas to assist law enforcement should take precedence over allowing a party to protect its intellectual property rights.  Indeed, both prosecutors and civil plaintiffs are subject to and have to proceed under statutes of limitation.  Plaintiff is exercising its rights to combat instances of intellectual property theft that are not being pursued by law enforcement.  To deny Plaintiff the right to pursue civil claims against infringers of its films would completely deny it criminal or civil protection under the Copyright Act.

Copyright infringement is a federal crime.  If TWC was truly such a champion of law enforcement as it suggests, the company would have allocated substantially more resources to

combat and deter such illegal activity than a woefully inadequate task-force of 5 full-time

employees out of the 38,000 individuals employed by TWC.

The declaration of Craig Goldberg filed in support of TWC's motion not only fails to

substantiate TWC's capabilities and burden, it actually shows that TWC has not done any

independent analysis related to this subpoena.  Mr. Goldberg states:

> For Dunlap's earlier copyright cases, TWC calculated that burdening its
> subpoena team with 5% more IP lookup requests, and the corresponding 5% delay
> in law enforcement responses, would not cause undue hardship to TWC or to law
> enforcement investigations.  This 5% limit amounts to 28 requests per month.
> TWC already is obligated to perform these 28 lookups per month from the prior
> Dunlap cases.  Thus any lookups ordered in this case simply an additional burden
> that will injure TWC and inhibit law enforcement investigations.

Exhibit 2 to TWC's motion (Affidavit of Craig Goldberg) at ¶ 10.

Therein, TWC concedes that it only calculated its IP address search capacity for the *prior*

*cases*.  TWC has not even tried to assess its capabilities to comply with this subpoena.  TWC's

position is clear.  It refuses to do any more IP address searches for Plaintiff's counsel.  It did not

consider this subpoena independently on its merits.  That does not only fail to justify a motion to

quash, it demonstrates TWC's bad faith.  TWC will not even try to comply with this subpoena.

TWC has no support for why Judge Collyer's rulings should have any impact in this case.

Judge Collyer made a finding of fact based on the two subpoenas at issue in the two cases in

front of her.  This case involves a completely different plaintiff enforcing completely different

copyrights and a completely different subpoena.  The fact that Plaintiff has the same counsel as

the plaintiffs in front of Judge Collyer does not relieve TWC of its burden to justify its motion on

this subpoena.[6]

---

[6] Further, TWC's position would require Plaintiff's counsel to possibly violate rules of
professional conduct.  If the Court were to adopt TWC's position, Plaintiff's counsel would
literally have to abandon hundreds of claims and would have to choose which of its clients were

More importantly, TWC's claims of capabilities are questionable, as Plaintiff has learned that TWC is capable of much more productivity. In *Achte* and *West Bay One*, TWC proposed that it could produce responses for 45 IP addresses per month. See Ex. 3 to Motion to Quash at p. 42:12-14. Further, in responding to the subpoenas in two prior cases (*G2 Productions* and *Worldwide Film Entertainment*), TWC was able to get information related to 200 IP address requests within a mere week of receiving the subpoenas.

Additionally, TWC has offered other attorneys representing copyright holders additional IP address requests per month. In attempting to resolve TWC's objections to his clients' subpoenas, attorney Kenneth J. Ford attempted to negotiate a resolution with TWC's counsel. Declaration of Kenneth J. Ford filed concurrently herewith, ¶ 3. Within those discussions, TWC's counsel originally offered Mr. Ford's clients the "Dunlap deal," i.e. 28 IP address lookups per month among all of my cases. Id. TWC's counsel later reneged and attempted to reduce the amount per month to varying lower numbers per month from the mid-teens to 23 IP address lookups per month. Id. TWC's counsel presented these offers in addition to the 28 minimum IP lookups TWC is obligated to perform pursuant to the court orders previously issued by Judge Collyer in this Court. Id.[7]

---

to receive the limited available IP address information to the detriment of other of Plaintiff's counsel's clients. There is no reason to believe that Judge Collyer's orders, or any authority, would put Plaintiff's counsel in that situation.

[7]  In attempting to resolve TWC's objections to his clients' subpoenas, Mr. Ford also offered to have his clients pay for TWC to hire an additional employee to focus on responding to his clients' subpoenas, thus alleviating any undue burden on TWC. Ford Decl., ¶ 4. TWC's counsel simply responded that Mr. Ford's "proposal is not workable and is not something TWC is able to pursue," and TWC's counsel did not provide any further explanation in response to follow up inquiries.

Lastly, in dealing with other ISPs in this case alone, Plaintiff's counsel has seen much greater productivity at much less expense from every other ISP.  For example, Charter was able to resolve nearly 300 IP addresses in a month, Cox was able to resolve nearly 360 IP addresses in a month, and Verizon was able to resolve nearly 350 IP addresses in a month.  Further, in dealing with over 20 ISPs in this case and in *West Bay One, Inc. v. Does 1-1,653*, CA. 1:10-cv-00481-RMC and *Achte/Neunte Boll Kino Beteiligungs GMBH & Co. KG v. Does 1-2,094*, CA No. 1:10-cv-00453-RMC, other ISPs are able to resolve hundreds of IP addresses per month, compared to TWC's claimed 28 per month.  Kurtz Decl., ¶ 6.[8]

Overall, TWC claims that it is not "seeking to avoid complying with lawful subpoenas, including subpoenas in copyright cases."  Motion at p. 11.  However, that is exactly what TWC is doing.  TWC's motion does not even attempt to limit the subpoena in this case.  As with TWC's overall strategy, quashing the subpoena is the only option for it.  It refuses to even try and process one single IP address in this case.

TWC's reliance on <u>Linder v. Calero-Portocarrero</u>, 180 F.R.D. 168 (D.D.C. 1998) is unpersuasive.  There, the witnesses (the U.S. federal government) submitted multiple declarations evidencing estimates of "over 27 man-years" and "7,572 man-hours" necessary for complying with certain of the categories of documents requested.  180 F.R.D. at 175.  TWC has not presented anything near the same level of information here.

Overall, TWC has not shown any actual evidence to justify good cause in quashing the subpoena.  Given the nature of TWC's business and the rampant copyright infringement its business clearly facilitates, TWC cannot simply stick its head in the sand and refuse to comply

---

[8]  It must be stressed that in this case and in *Achte* and *West Bay One*, Plaintiff's counsel has dealt with over 20 different ISPs, and TWC is the only one to bring a motion to quash.  Kurtz Decl., ¶ 6.

with these types of subpoenas.  Doing so allows TWC to enable, and profit from, copyright infringers but fails to allow the copyright holder victims any redress.

      2.   <u>Plaintiff's counsel has attempted to work with TWC, but TWC has refused to comply with the subpoena since day one.</u>

TWC argues that Plaintiff's counsel has not complied with Fed. R. Civ. P. 45(c)(1) and attempted to take reasonable steps to avoid imposing burdens and expenses on TWC.  Nothing could be further from the truth.

TWC conveniently fails to mention that Plaintiff's attorney sent the subpoena to TWC's attorney and specifically offered to work with TWC.  <u>See</u> Kurtz Decl., ¶ 2, Ex. 1.  Therein, Plaintiff's attorney offered to a stipulation to modify the Court's discovery order to expand TWC's timeframe to comply with the subpoena.  <u>Id.</u>  On the other hand, TWC has maintained that it will not do a single IP address search for this subpoena.  <u>Id.</u> at ¶ 2.

A motion to quash or modify a subpoena is only proper when "fails to allow a *reasonable* time to comply."  Fed. R. Civ. P. 45(c)(3)(A)(i) (emphasis added).  It must be again noted that the time for compliance stated in the subpoena was Plaintiff's attempt to be in compliance with this Court's order, which states "if an ISP and/or any Defendant wants to move to quash the subpoena, the party must do so before the return date of the subpoena, which shall be 30 days from the date of service."  [Doc. No. 7]

Further, Plaintiff and its counsel have always expressed to TWC that they are willing to grant TWC reasonable extensions to comply with the subpoena.  However, that timeframe cannot span the *years* that TWC suggest it would take to comply with the subpoenas.  Such an extension is not reasonable and seriously thwarts Plaintiff's ability to prosecute its case.

3. <u>TWC's misplaced arguments and attacks on Plaintiff's counsel show TWC's true intention to thwart's Plaintiff's case in this court and the court of public opinion.</u>

TWC presents a number of arguments that have absolutely nothing to do with the merits of the subpoena.  First, TWC states that Plaintiff's counsel should have informed the Court that this case is related to other cases filed by Plaintiff's counsel.[9]  Motion at p. 12-13.  Contradicting itself, TWC later argues that these cases improperly join the Doe Defendants and that "[t]here is no allegation linking the defendants together and no suggestion that their conduct arises 'out of the same transaction [or] occurrence.'"  Motion at p. 14 (citing Fed. R. Civ. P. 20(a)(2)(A)).[10]  TWC cannot have it both ways – the allegations are either related or they are not.  In fact, TWC's own arguments do nothing more than strain its credibility and that of its counsel – they will do and say anything to gather support for their position.[11]

Additionally, TWC questions the validity of the cases initiated by Plaintiff's counsel because they are "novel" and larger in scale than earlier, comparable copyright infringement cases.  <u>See, e.g.</u> Motion at p. 3.  Therein, on multiple occasions, TWC highlights the fact that it is not a party to this case, but it appears that TWC is utilizing that fact to garner public support for

---

[9]  On a number of occasions, TWC states that the various cases filed by Plaintiff's counsel are the same, "except for the name of the movie."  <u>See, e.g.</u>, Motion at p. 3.  This is simply not true.  TWC overlooks the glaring fact that the various cases involve *different plaintiffs*.  The cases involve different copyright holders, different copyrights, and different allegations of infringement.  Therefore, the cases are not "related" to the extent deemed by the Court's rules simply because they all have the same counsel and all involve claims for copyright infringement.

[10]  There is no argument by TWC, or any justification, as to how TWC even has standing to assert that Plaintiff's case improperly joins multiple Defendants.  The cases cited by TWC deal specifically with motions made by doe defendants.  See <u>LaFace Records, LLC v. Does 1-38</u>, 2008 WL 544992 (E.D.N.C.).

[11]  Further, it appears that TWC is advocating that responding to a hundred subpoenas, each asking for one IP address, would be easier than responding to one subpoena asking for a hundred.  Such an approach does not make any sense for Plaintiff, TWC, or the courts.

its position and possibly in an attempt to gain more subscribers who would value TWC's efforts to protect the privacy of demonstrated copyright infringers.  To the extent TWC's tactics are just that – letting the public know that TWC is a good ISP for copyright infringers because TWC will fight any subpoenas related to infringers' activities – TWC exposes itself to a claim for contributory copyright infringement.  See generally, Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd., 545 U.S. 913, 125 S.Ct. 2764 (2005) (holding that one who distributes a service with the object of promoting its use to infringe copyright is liable for the resulting acts of infringement by third parties).

Nevertheless, TWC's arguments regarding jurisdiction, joinder, and the general appropriateness of the case are not the appropriate topics on a motion to quash.  The merits of the case are simply not at issue.  Further, while TWC is quick to reference the hearing in front of Judge Collyer, TWC conveniently fails to mention Judge Collyer's ruling on these issues.

Judge Collyer specifically noted TWC's argument that it does not have any customers in this jurisdiction, but she then ruled that this argument did not justify quashing the subpoena and that any arguments on personal jurisdiction grounds were premature.  See Motion to Quash, Ex. 3 at pp. 44:23-45:7.  Further, Judge Collyer specifically dealt with the argument of improper joinder, and concluded that the Doe Defendants were not improperly joined.  Kurtz Decl., Ex. 3.

Overall, TWC has not shown how its arguments concerning the relatedness of this case to other copyright cases, the asserted improper joinder, or the asserted lack of personal jurisdiction over the Doe Defendants are at issue on a motion to quash.  These issues simply do not invalidate the subpoena.  Rather, TWC has made itself clear in that it is hoping to invite public praise for its motion to quash and possibly involvement from amicus filers.  The Court should overlook TWC's improper tactics and enforce the subpoena.

13

4.  <u>TWC's arguments regarding costs are unsubstantiated and show TWC's true intent to hold Plaintiff hostage in an effort to avoid compliance.</u>

Rule 45 only provides for costs to be paid to a non-party served with a subpoena if it incurs "*significant* expense resulting from compliance."  Fed. R. Civ. P. Rule 45(c)(2)(B)(2) (emphasis added).  "However, 'protection from significant expense' does not mean that the requesting party necessarily must bear the entire cost of compliance…."  <u>In re Exxon Valdez</u>, 142 F.R.D. 380, 383 (D.D.C. 1992).  "[I]t is relevant to inquire whether the putative non-party actually has an interest in the outcome of the case, whether it can more readily bear its costs than the requesting party, and whether the litigation is of public importance."  *Id.* (internal citations omitted).

Here, TWC states that it has done a cost study establishing a cost of $45 per IP address search.  Motion to Quash, Ex. 2 (Craig Goldberg Affidavit) at ¶ 11.  However, TWC conveniently failed to actually include the cost study in its court filings.  Again, TWC is only giving the court part of the story.

Attached herein is the supposed cost study that TWC provided to Plaintiff's counsel.  Kurtz Decl., Ex. 4.  Within that "cost study," all of the costs are associated with salaried employees.[12]  Therein, as stated by TWC's own cost study, responding to Plaintiff's subpoena would actually *not* incur any additional expenses.

TWC has stated that it would simply shift 5% of its employees' subpoena compliance time from law enforcement to Plaintiff's subpoena.  <u>See</u> Motion to Quash, Ex. 2 (Craig Goldberg Affidavit) at ¶ 10.  Though, TWC states that it could "burden its subpoena team with 5% more IP look up requests," TWC also states that this would result in a 5% "corresponding" delay in law

_____

[12]  In the purported "cost study" done by TWC, it states that for the "local operations" aspect of an IP address search, it takes approximately 20 minutes per IP address.  *See* Kurtz Decl., Ex. 4.

enforcement responses.  Accordingly, TWC would not incur additional time or expenses to respond to Plaintiff's subpoena, it would simply make room for Plaintiff's requests within its current capacity.

Therein, TWC's claimed cost of $45 for looking up identifying information for each IP address suffers from a plain error in math.  TWC has calculated its costs per IP address by taking the total salaries of its subpoena compliance department divided by the average number of IP lookups per year, based on last year's number of lookups.  If TWC were to increase its burdens and corresponding IP address lookup production, as it argues has resulted from this and similar copyright infringement cases, the cost per IP address lookup must necessarily decrease.

Last, TWC cannot credibly claim that the cost of compliance is "significant" when compared to the $4.7 billion in revenue it received in just the third quarter of 2010.  See Kurtz, Ex. 5.  Further, TWC obtains a significant portion of its revenue from its subscribers, the Doe Defendants in this case, and it could be argued that all of TWC's revenue results either directly or indirectly from its subscribers/the Doe Defendants.  See id.

Overall, TWC's own arguments show that it does not actually incur additional costs or expenses in responding to Plaintiff's subpoena – it incurs the expenses, i.e. its employees' salaries, regardless of whether it had to respond to Plaintiff's subpoena or not.  Therefore, TWC is not entitled to any costs to be paid by Plaintiff.

Last, the case again cited by TWC, Linder v. Calero-Portocarrero, is upersuasive.  In fact, there the court required that the plaintiff only pay half of the government's costs in complying with a subpoena.  180 F.R.D. at 177.

5.   <u>TWC's argument on service fails to tell the whole story.</u>

TWC argues that service of the subpoena was insufficient.  However, TWC conveniently

fails to apprise the Court of material facts.

On September 22, 2010, a representative from TWC called Plaintiff's counsel regarding

the subpoena in this case.  Kurtz Decl., ¶ 4; <u>see</u> Kurtz Decl., Ex. 2.  The TWC representative

stated that she had the subpoena and would be the person working on it.  <u>Id.</u>  She requested

Plaintiff's counsel email her a copy of the IP address list in electronic form.  <u>Id.</u>  In response

Plaintiff's counsel emailed the TWC representative the subpoena and the IP address list in

electronic form.  <u>Id.</u>  Therefore, it is disingenuous for TWC to claim that service was insufficient

when it acknowledged receipt of the subpoena.

Further, TWC argues that personal service is the only permissible form of service for a

subpoena.  However, TWC's argument is undercut by its own practices.  TWC's own subpoena

compliance website states that TWC "accepts lawful process by fax."  Kurtz Decl., Ex. 6

(www.timewarnercable.com/corporate/subpoenacompliance.html).[13]

Last, regardless of the method of service, TWC has mooted the issue of service by filing

its motion to quash.  TWC could have stood on its objections and forced Plaintiff to bring a

motion to compel, but it did not.  TWC took the affirmative action of utilizing the Court to quash

the subpoena.  Therefore, TWC cannot turn around and claim that service was ineffective.

The cases cited by TWC are not persuasive.  As stated in <u>Hall v. Sullivan</u>, 229 F.R.D.

501 (D. Md. 2005), <u>F.T.C. v. Compagnie De Saint-Gobain-Pont-a-Mousson</u>, 636 F.2d 1300

(D.C. Cir. 1980) "is of little assistance in resolving the question presented in the instant case."

---

[13]  TWC's counsel has asserted that TWC's subpoena compliance website only applies to law
enforcement subpoenas.  However, TWC's counsel has not explained how the service of law
enforcement subpoenas differs from civil subpoenas.

Hall, 229 F.R.D. at 503.  "In declining to issue an order to enforce the subpoenas, however, the [FTC] court acknowledged that while the question presented 'appear[ed] to rest solely upon statutory interpretation, [the court's] answer ... [was] primarily guided by [its] recognition of established and fundamental principals of international law.' Id. Unlike *Compagnie*, the facts of the discovery dispute here do not implicate established and fundamental principles of international law."  Id.

United States v. Philip Morris Inc., 312 F. Supp. 2d 27 (D.D.C. 2004) is equally unpersuasive.  There, the court stated that "Fed.R.Civ.P. 45(b)(1) requires personal service of deposition subpoenas," but it gave absolutely no analysis or explanation for this conclusion.  312 F. Supp. 2d at 37.  On the other hand, the court in Hall provided a thorough analysis of why the minority position – personal service is not required – includes "better reasoned cases."  229 F.R.D. at 503.

Relying primarily on Doe v. Hersemann, 155 F.R.D. 630 (N.D. Ind. 1994), Hall analyzed Rule 45's requirement of "delivery" of a subpoena in light of Fed. R. Civ. P. Rules 1 and 4.  In Doe, the court held that service of a subpoena via certified mail was sufficient under Rule 45, particularly when the witness does not deny actual receipt.  There, the court concluded that requiring personal service in order to effectuate delivery, even where the party served has not denied it received the subpoena and had an opportunity to protect its interests, "would only serve to torture the rules and drive up the expense of litigation," which would be in direct contradiction to the directive of Rule 1. 155 F.R.D. at 631.

Doe further explained that Fed. R. Civ. P. Rule 4's use of the word "personally" in regards to the type of service required for a summons and complaint showed no such requirement existed in Rule 45.  "If 'delivering ... to such person,' as stated in Rule 45(b)(1),

required personal, in-hand service, then 'personally' in Rule 4(e)(1) would be pure surplusage. The better conclusion is that the drafters knew how to indicate a personal service requirement and that they chose not to do so when they created Rule 45." 155 F.R.D. at 631.

Finally, <u>Hall</u> noted that a witness receiving a subpoena *deuces tecum* is not prejudiced by service of the subpoena that is not personal service. <u>Hall</u> recognized that Rule 45 protects a non-party who receives actual notice, as TWC did in this case, in that it need not appear and can protect itself from being compelled to produce the materials requested simply by filing objections. <u>See</u> Fed. R. Civ. P. 45(c)(2)(A). "Accordingly, where the only thing at stake is the production of documents, and the subpoenaed party need only object to shift the burden on the requesting party to file a motion to compel production of the requested documents, I see no reason to require in-hand delivery of subpoenas-so long as the service is in a manner that reasonably ensures actual receipt of the subpoena by the witness." 229 F.R.D. at 506.

## IV. CONCLUSION

Overall, TWC has not demonstrated any reason to quash the subpoena. TWC has simply not shown any evidence to justify its inability to comply with the subpoena or the costs it supposedly incurs. TWC has not proved any detailed information on their procedures and processes why they simply cannot do better. Therefore, TWC has not met its burden on its motion to quash.

On the other hand, Plaintiff has shown good cause for obtaining information related to the Doe Defendants from the non-party ISPs, especially when considering that these ISPs typically retain user activity logs containing the information sought for only a limited period of time before erasing the data. Therefore, the court should deny TWC's motion in its entirety and

at least allow Plaintiff the opportunity to conduct discovery and obtain evidence to prove the

copyright infringement and irreparable harm in this case.

Respectfully Submitted,

MAVERICK ENTERTAINMENT GROUP, INC.

**DATED**:  December 6, 2010

By:  /s/_____
　　　　　Thomas M. Dunlap (D.C. Bar # 471319)
　　　　　Nicholas A. Kurtz (D.C. Bar # 980091)
　　　　　DUNLAP, GRUBB & WEAVER, PLLC
　　　　　1200 G Street, NW Suite 800
　　　　　Washington, DC 20005
　　　　　Telephone: 202-316-8558
　　　　　Facsimile: 202-318-0242
　　　　　tdunlap@dglegal.com
　　　　　nkurtz@dglegal.com
　　　　　*Attorney for the Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on December 6, 2010, a true and correct copy of the foregoing PLAINTIFF'S OPPOSITION TO MOTION TO QUASH SUBPOENA FILED BY NON-PARTY TIME WARNER CABLE INC. was sent via first-class mail to the following:

> Alexander Maltas
> Latham & Watkins LLP
> 555 11th St., NW
> Suite 1000
> Washington, DC 20004
> *Counsel for Time Warner Cable Inc.*

> /s/ Nick Kurtz
> Nicholas A. Kurtz